MARGARET DUBIL, AS ADMINISTRATRIX *AD PROSEQUEN-DUM* AND AS GENERAL ADMINISTRATRIX OF THE ESTATE OF CHESTER M. DUBIL, PLAINTIFF-RE-SPONDENT, v. PHILIP A. LABATE, TRUMAN D. BOYES, RADFORD BROKAW, JOSEPH A. CIPOLLA, JACK C. GARDNER, MERTON L. GRISWOLD, JR., NANCY D. DAVIS, FREDERICK W. LATHROP, JR., JULIUS B. MINTZ, WALTER P. PETER, JR., GENE B. ZAINO, THOMAS S. P. FITCH, FRANK C. DRESDALE, RICHARD C. PETERS, JOHN P. CANNIS, EDWARD M. COE, HAY-WARD F. DAY, JOSEPH M. GANNON, CARL G. HANSON, PAUL K. JOHNSON, EMIL A. KRATZMAN, RICHARD W. LANG, THEODORE LOIZEAUX, GEORGE H. MARTS, CHARLES T. STEFFENS, BERNARD WALLACH, LEO E. BARON, BONG HAK HYAN, MUHLENBERG HOSPITAL, A NEW JERSEY CORPORATION, BERNARD J. SUSSMAN, DOMINICK A. SCIALABBA AND PLINA HAMMOND, DE-FENDANTS-APPELLANTS.

Argued May 6, 1968—Decided June 28, 1968.

Mr. Burtis W. Horner, Mr. William P. Braun and Mr. L. Bruce Puffer, Jr., argued the cause for the defendants-appellants (Messrs. Stryker, Tams & Dill, by Mr. Burtis W. Horner, attorneys for defendants-appellants, Frederick W. Lathrop, Jr., John P. Cannis, Carl G. Hanson, Richard W. Lang, Bong Hak Hyan and Richard C. Peters; Messrs. Vieser, Hoey & San Filippo, by Mr. William L. Vieser, attorneys for defendants-appellants, Merton L. Griswold, Jr., Radford Brokaw, Philip A. Labate, Jack C. Gardner, Edward M. Coe, Hayward F. Day, Joseph M. Gannon, Paul K. Johnson, Emil A. Kratzman, George H. Marts and Bernard Wallach; Messrs. Braun & Braun, by Mr. William P. Braun, attorneys for defendant-appellant, Thomas S. P. Fitch; Messrs. Harkavy & Lieb, by Mr. Donald L. Berlin, attorneys for defendant-appellant, Charles T. Steffens; Messrs. Lamb, Blake, Hutchinson & Dunne, by Mr. H. Curtis Meanor, attorneys for defendant-appellant, Muhlenberg Hospital, a New Jersey corporation; Messrs. Shanley & Fisher, by Mr. John J. Francis, Jr., attorneys for defendant, Bernard J. Sussman; Messrs. Burton, Quackenboss, Axelrod & Rubenson, by Mr. Henry H. Rubenson, attorneys for defendant, Dominick A. Scialabba; Mr. John A. McKenna, attorney for defendant, Plina Hammond; Messrs. Mead, Gleeson, Hansen & Pantages, by Mr. Stanley G. Bedford, attorneys for defendant, Julius B. Mintz. Mr. John F. DiLorenzo, Jr., on the brief).

Mr. Myron W. Kronisch argued the cause for the plaintiff-respondent (Messrs. Roskein, Kronisch & Felzenberg, attorneys; Mr. Myron W. Kronisch on the brief).

The opinion of the court was delivered by

PROCTOR, J. Plaintiff, administratrix *ad prosequendum* and general administratrix of the estate of her husband Chester M. Dubil, brought this action to recover damages for herself and their four infant children for his allegedly wrongful death. The plaintiff has remarried and is now the wife of Frederick Whiteley by whom she has a child. On plaintiff's motion before trial the pretrial order was amended:

"ORDERED, that the fact of remarriage of the plaintiff is not to be made known, or commented upon, to the jury during the trial of this matter or during voir dire, and that during the trial reference to plaintiff shall be only by use of the name 'Margaret Dubil'. The Court will conduct the preliminary examination of the prospective jurors as to their business or social contacts with the parties and witnesses, including reference to their past and present places of residence or business, and will include in such list 'Mr. Frederick R. Whiteley and Mrs. Margaret Whiteley of 143 Henry Street, South Amboy.' Counsel may supplement the Court's interrogation to prospective jurors providing no reference is made to the remarriage."

The defendant obtained leave from the Appellate Division to challenge this provision in an interlocutory appeal. We certified the matter before argument there. *R. R.* 1:10–1.

The question before us — one which previously has not been decided by our State's highest court — is whether the remarriage of a surviving spouse may be utilized by a defendant in a wrongful death action to mitigate damages.

Of the many American jurisdictions which have considered the question, all but two (Mississippi and Wisconsin) have held that the remarriage of a surviving spouse, or the possibility thereof, does not affect the damages recoverable for the wrongful death of the deceased spouse. *E. g., Bunda v. Hardwick*, 376 *Mich.* 640, 138 *N. W. 2d* 305 (1966) (overruling prior Michigan decisions); *Reynolds v. Willis*, 209 *A.*

2d 760 (*Del. Sup. Ct.* 1965); *Johns v. Baltimore & Ohio Railroad Company,* 143 *F. Supp.* 15, 28–29 (*W. D. Pa.* 1956), affirmed *mem.,* 239 *F.* 2d 385 (*3rd Cir.* 1957); *The City of Rome,* 48 *F.* 2d 333 (*S. D. N. Y.* 1930); *J. A. Robinson Sons, Inc. v. Ellis,* 412 *S. W.* 2d 728 (*Texas Ct. of Civ. App.* 1967); *Benwell v. Dean,* 249 *Cal. App.* 2d 345, 57 *Cal. Rptr.* 394 (*Ct. App.* 1967); *Finkel v. State,* 37 *Misc.* 2d 757, 237 *N. Y. S.* 2d 66 (*Ct. Cl.* 1962). See cases collected in Annotation 87 *A. L. R.* 2d 252 (1963); 3A Frumer, Benoit, Friedman & Kaufman, *Personal Injury: Actions, Defenses, Damages* 156 (1965). *Contra, Campbell v. Schmidt,* 195 *So.* 2d 87 (*Miss. Sup. Ct.* 1967); *Jensen v. Heritage Mutual Ins. Co.,* 23 *Wis.* 2d 344, 127 *N. W.* 2d 228 (1964); *Mead v. Clarke Chapman & Co., Ltd.* [1956] 1 *All E. R.* 44 (*C. A.*)

 In New Jersey, the measure of damages under the Wrongful Death Act, *N. J. S.* 2A:31–1 *et seq.,* is the "deprivation of a reasonable expectation of a pecuniary advantage which would have resulted by a continuance of the life of the deceased." *McStay v. Przychocki,* 7 *N. J.* 456, 460 (1951); *Carter v. West Jersey & Seashore R. R. Co.,* 76 *N. J. L.* 602, 603 (*E. & A.* 1908). The amount of the recovery under this standard is based upon the contributions, reducible to monetary terms, which the decedent reasonably might have been expected to make to the survivors, and is not related to their needs. Clearly, even were a widow to show that her financial needs were greater than the amount her husband formerly provided, she would not be entitled to a recovery greater than the reasonable expectation of pecuniary benefits lost by her husband's death.[1] That a widow is in a better financial position after her husband's death—

---

[1] Of course, an increase in the survivor's needs could be used to show that a deceased spouse who had contributed less than the amount he was capable of giving was likely to have increased his contribution—within his capacity—in light of the greater need. See *McStay v. Przychocki,* 10 *N. J. Super.* 455 (*App. Div.* 1950), affirmed, 7 *N. J.* 456 (1951).

whether because of insurance benefits, inheritance, or her own earnings—likewise provides no reason, under our statutory scheme, for a diminution of her recovery.

 That the receipt of such benefits should not reduce the award long has been recognized in the doctrine that a tortfeasor may not show in mitigation of damages that the plaintiff has received pecuniary advantages from a collateral source. *Patusco v. Prince Macaroni, Inc.*, 50 *N. J.* 365, 368 (1967) (holding that a wife may recover medical expenses from a tortfeasor despite the fact that her husband, and not she, is responsible for their payment) ; *Long v. Landy*, 35 *N. J.* 44, 55–56 (1961) (holding that a wife's recovery from her husband's estate for injuries negligently inflicted upon her by the husband is not reduced by inheritance from the husband and payments made to her under his insurance policies) ; *Muradian v. Paganessi*, 3 *N. J. Misc.* 320 (*Sup. Ct.* 1925) (holding that the receipt by plaintiff of insurance on the life of the decedent may not be shown in a wrongful death action to reduce plaintiff's recovery) ; *Hexamer v. Public Service Railway Co.*, 4 *N. J. Misc.* 184 (*Sup. Ct.* 1926) (holding that a widow's recovery for the death of her husband was not to be diminished by the inheritance she received from him). See also *Rusk v. Jeffries*, 110 *N. J. L.* 307, 311 (*E. & A.* 1933) ; *Weber v. Morris and Essex R. R. Co.*, 36 *N. J. L.* 213, 215 (*Sup. Ct.* 1873). As we recently said in *Patusco, supra,* at *p.* 368: "It should not concern the tortfeasor that someone else is obligated to aid his victim because of a duty assumed by contract or imposed by law. * * * [A] wrongdoer cannot claim the benefit of the rights his victim may have against others by virtue of contract, employment, or other relation." We conclude that when the "someone else" is a new husband who has assumed, by marital obligation, the duty to support the widow, his contributions are analogous to precuniary benefits received from insurance, inheritance, employment, or other collateral sources. Just as a widow's receipt of an inheritance from a relative will not decrease the recoverable loss of her de-

ceased husband's potential pecuniary contributions, so her receipt of financial benefits from a new husband—or the possibility thereof—should not be used to reduce her recovery. Accordingly, we hold that the remarriage of a spouse is not a factor to be considered by the jury in their determinaion of the damages to be awarded for the wrongful death of a deceased spouse.[2] Of course, the same rule applies to the recovery by the dependent children of the deceased.

Our conclusion conflicts with a decision of an intermediate appellate court of this State. In *Klemann v. Atlantic City R. R. Co.*, 5 *N. J. Misc.* 133 (*Sup. Ct.* 1927), the court reduced as excessive verdicts obtained by two young widowers for the deaths of their wives, saying that "we cannot shut our eyes to the probability that each surviving husband may remarry and thus obtain pecuniary benefits akin to those lost through death of the respective wives." *Id.*, at *p.* 136. See also, *Grant v. Groom*, 11 *N. J. Misc.* 285 (*Ocean Cty. Cir. Ct.* 1933). We believe that the *Klemann* case was wrongly decided and we overrule it. To the extent that language in *Grant* is inconsistent with our opinion here, it is disapproved.

Our resolution of this issue does not dispose of this appeal. Though evidence of the plaintiff's remarriage is not relevant to the question of damages, we disagree with the trial court's attempt to suppress any mention of the remarriage. It would be offensive to the integrity of the judicial process if the plaintiff, after taking an oath to be truthful, were permitted to misrepresent her marital status to the jury. Of course, the defendants may not inquire into the details of the remarriage nor may they offer evidence concerning it. However, the desirable exclusion of evidence relating to the remarriage may not be carried to the point

---

[2] A fortiori the mere possibility of remarriage is not to play a role in the jury's determination; in this connection, the conclusion we have reached is even more compelling since an evaluation of the possibility of remarriage would engage the jury in the wildest speculation.

of affirmatively misrepresenting the truth to the jury. It seems to us that in the course of the trial of a wrongful death case, it would be virtually impossible to avoid mention of a remarriage without resorting to untruths.[3] (Contrast the situation here with cases where the subject of a defendant's insurance coverage may be kept from the jury without resort to untruths. *Brandimarte v. Green*, 37 *N. J.* 557 (1962); (*Sutton v. Bell*, 79 *N. J. L.* 507 (*E. & A.* 1910).) Thus, we believe that—while evidence of the details of a remarriage, such as the earnings of the new spouse or the birth of a child, is to be excluded—the mere fact of a plaintiff's remarriage should not be kept from the jury. The trial judge should instruct the jury, at the beginning of the case, that the plaintiff has remarried but that this fact is to play no role in their determination of the pecuniary advantage which would have resulted from a continuance of the life of the deceased. We have recognized in another context the desirability of honestly presenting certain facts to a jury with instructions that it would be improper for them to consider these facts in their deliberations. *State v. White*, 27 *N. J.* 158, 178–79 (1958). In the present situation we have no doubt that the jury, after proper instructions by the court, will be capable of returning a verdict uninfluenced by the plaintiff's remarriage.

The cause is remanded to the trial court with instructions to modify the pretrial order in accordance with this opinion.

*For modification*—Chief Justice WEINTRAUB and Justices JACOBS, PROCTOR, HALL, SCHETTINO and HANEMAN—6.

*Opposed*—None.

---

[3] In addition to the problem of a female plaintiff's change of name due to her remarriage, there is the difficulty, in a suit by a surviving husband who has remarried, of examining prospective jurors concerning their possible acquaintance with his new wife.