**Wallace GLICK, by his next friend Bessie McGinty, and Bessie McGinty, Plaintiffs-Appellants,**

v.

**ALLSTATE INSURANCE COMPANY, a foreign insurance corporation, Skokie, Illinois, the Travelers Indemnity Company, a foreign insurance corporation, Hartford, Connecticut, and American Family Insurance Company, a foreign insurance corporation, Madison, Wisconsin, Defendants-Respondents.**

**No. 25067.**

Kansas City Court of Appeals.

Missouri.

Dec. 2, 1968.

Elwyn L. Cady, Jr., Kansas City, for appellants.

John R. Caslavka, Kansas City, for All-state Ins. Co., Shughart, Thomson & Kilroy, Kansas City, of counsel.

Morris H. Kross, Rogers, Field & Gentry, Kansas City, for Travelers Indemnity Co.

Thomas A. Sweeny, Popham, Thompson, Popham, Trusty & Conway, Kansas City, for American Family Ins. Co.

CROSS, Judge.

This is an appeal from a judgment of the Circuit Court of Clay County dismissing a petition for a declaratory judgment filed by plaintiffs-appellants. The appeal was originally directed to the Supreme Court. That court determined itself to be without jurisdiction and accordingly transferred the cause to this court.

Plaintiff-appellant Bessie McGinty is the widow of Marvin Glick, deceased, who is alleged to have died from injuries sustained in an automobile accident. Her present name is accounted for by the fact of her remarriage to one John McGinty since the death of Marvin Glick. Plaintiff-appellant Wallace Glick, a minor, is the surviving son of Marvin Glick, deceased, and Bessie McGinty. Two other minor sons of Marvin Glick and Bessie McGinty (brothers of Wallace Glick) are also deceased, allegedly as a result of the same accident. The present case grows out of a lawsuit previously prosecuted in Clay County by plaintiff Bessie McGinty as guardian and curator of plaintiff Wallace Glick to recover on his behalf damages for the wrongful death of his father, and to recover, on her own be-

half, damages for the wrongful death of her two minor sons. The action was instituted against multiple defendants.[1]

The above described wrongful death suit came on for hearing in the Circuit Court of Clay County on April 17th, 1967. Preliminarily plaintiffs filed a "motion in limine" requesting the court to direct the defendants in that action to refrain from interrogating jury panel members on voir dire as to their acquaintance with Mrs. McGinty by referring to her by that name and thus disclose the fact of her remarriage. After an extended hearing and argument by counsel, the requested motion was overruled by the court. Thereafter plaintiffs orally moved for a continuance to enable Mrs. McGinty to file legal proceedings "to get her named changed" (back to Glick, so as not to divulge the remarriage in trial of the case). The motion was overruled and plaintiffs voluntarily dismissed their lawsuit.

Thereafter, on April 25th, 1967, Mrs. McGinty instituted the present action in the Clay County Circuit Court. Seeking a declaratory judgment, she sued as plaintiff in her own behalf and as next friend of plaintiff Wallace Glick, her minor son. The suit is against the three insurance companies which had appeared and defended on behalf of the persons sued in the former damage suit. The defendants in that case are not joined with the insurance companies in this case.

The petition contains allegations of fact to the effect that in the previously pending action for wrongful death the parties duly appeared pursuant to call of the case for trial on April 17, 1967; that "preliminarily to selection of the jury in said cause, plaintiffs presented to the Court their Motion in Limine, presenting their position concerning the proper method of keeping the issue of remarriage of the surviving widow and mother, Bessie McGinty, out of said case."; that although the court properly ruled that "remarriage of said widow and mother" was not an issue, the court "would not sustain the portion of said Motion in Limine directed to the remarriage status, but would permit the above-named defendants to conduct a voir dire interrogation of the jury which would clearly reveal the marital status of the widow and mother herein."; that after the trial court's adverse ruling on the motion plaintiff moved for and the court denied a continuance; and, that "plaintiffs thereupon took a voluntary nonsuit in order to seek further legal relief before proceeding further with trial." The prayer of the petition is for "a declaration of the rights and status of the remarried widow and mother of decedents who has sought justice in the courts of Missouri under the statute upon the death of her husband and two minor children."

The three defendants (insurance companies) filed separate motions to dismiss plaintiffs' petition for declaratory judgment on the ground that it failed to state a claim upon which relief can be granted. During argument on the motion and in response to direct interrogation by the court as to what specific relief plaintiffs were seeking by declaratory judgment, plaintiffs' counsel answered to the general effect that they wanted the court to decide whether, in the anticipated trial of the death actions, defending counsel would be permitted to inquire of the jury panel on voir dire examination, "if you know her under her present name (McGinty) and thus disclose the fact of her remarriage." On June 20th, 1967, the trial court sustained defendants' motion to dismiss and "ordered and adjudged * * * that this cause be, and the same hereby is dismissed." This appeal by plaintiffs followed.

1. The case was entitled, "Wallace Glick, by his Guardian and Curator, Bessie McGinty, and Bessie McGinty, individually, Appellants, v. Ballentine Produce Incorporated, Charles James Harris, C. J. Harris, Alice J. Reed, Administratrix of the Estate of William Claire Reed, deceased, Tom Joseph Jones and Miller Chevrolet Company, Respondents." A previous appeal involving different issues is reported in Glick v. Ballentine Produce Inc., Mo., 396 S.W.2d 609.

Defendants-respondents have filed a motion to dismiss this appeal supported by record proof that the plaintiffs have refiled their causes of action for alleged wrongful deaths (which previously pended in Clay County) in the Circuit Court of Jackson County. Dismissal of the appeal is contended for on the ground that the issues are moot because any question pertaining to voir dire examination of the jury is properly determinable by the court in which those refiled cases are now pending. In our discretion we deny the motion and proceed to determine the appeal issues presented.

Plaintiffs' brief contains only one point—a complaint that "The court erred in dismissing appellants' petition since it did properly state a cause of action for declaratory judgment." Argument on the point runs to less than one page and is to the effect that a jury is likly to reduce a death award to a widow if they know she has remarried; that "judicial techniques to foreclose such disclosure are approved" (citing Speiser, Recovery for Wrongful Death, Sec. 6:12, pp. 485–487); that "Relief before trial is essential * * * (so that) * * * no suspicions be aroused during voir dire examination"; that declaratory judgments have previously been utilized as practice "guidelines" in personal injury cases defended by insurance companies (citing Liberty Mutual Ins. Co. v. Jones, 344 Mo. 932, 130 S.W.2d 945, 125 A.L.R. 1149); and that it is appropriate in this case that a declaratory judgment issue to prevent disclosure to the jury of the widow's remarriage.

The fundamental, underlying requisite for the assumption of jurisdiction to render a declaratory judgment is the existence of an actual, justiciable controversy between the parties as to their respective legal rights and duties, admitting of specific relief by way of a judgment conclusive in character and determinative of the issue involved. 10A Mo. Digest, Declaratory Judgment, ☞ No. 61. Our courts further

say that a petition for declaratory judgment must present a real and substantial controversy admitting of specific relief through a decree of conclusive character *as distinguished from a decree which is merely advisory* as to the state of law upon purely hypothetical facts. M.F.A. Mutual Insurance Co. v. Hill, Mo.Sup., 320 S.W.2d 559, 10A Mo. Digest, Declaratory Judgment, ☞ Nos. 66, 313. In the recent case of Spencer v. Village of DeKalb, Mo.Sup., 408 S.W.2d 78, the Supreme Court stated the following quoted essential requirements of a petition for declaratory judgment:

"Plaintiff's petition must present a real and substantial controversy admitting of *specific relief* through a decree of a *conclusive character*, as distinguished from a decree which is merely advisory as to the state of the law upon purely hypothetical facts. Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000; Anderson, Declaratory Judgments, p. 27, 16 Am.Juris., Sec. 46. Actions are merely advisory when there is an insufficient interest in either plaintiff or defendant to justify judicial determination, i. e., where the judgment sought would not constitute a specific relief to one party or the other. They are merely advisory when the judgment would not settle actual rights. If actual rights cannot be settled the decree would be a pronouncement of only academic interest. Plaintiff must have a legal interest in the relief he seeks. The question is justiciable only where the judgment will declare a fixed legal right and accomplish a useful purpose. Plaintiff must present a state of facts from which he has present legal rights against those he names as defendants with respect to which he may be entitled to some *consequential relief* immediate or prospective. If it appears plaintiff can have no relief against defendant, defendant should not be forced into litigation which can have no possible final result in favor of plaintiff."

And in Nations v. Ramsey, Mo.App., 387 S.W.2d 276, the court said:

"But we also understand that the declaratory judgment act, while it is to be interpreted liberally, is not a general panacea for all real and imaginary legal ills, nor is it a substitute for all existing remedies. It should be used with caution. And except in exceptional circumstances plainly appearing, it is not to be used and applied where an adequate remedy already exists. The petition must present a sufficiently complete state of facts constituting issues ripe for determination, and presenting a controversy which admits of specific relief of conclusive character as distinguished from one which is purely advisory. *Mere disagreement in regard to a legal or factual question is not, in and of itself, adequate ground for the use of the declaratory judgment process.* (Emphasis supplied.)

■ Examined under the foregoing prescribed standards of sufficiency, the petition before us is found to be deficient. It fails to present a state of facts necessary to establish a real and substantial controversy, justiciable in nature, sufficient to invoke a conclusive judgment administering any specific relief to any party. On the contrary, the decree prayed for would be merely advisory and would not settle any actual rights. In the language of the opinion in Spencer v. Village of DeKalb, supra, "The decree would be a pronouncement of only academic interest."

Plaintiffs by their attorney have conceded in open court that any declaratory judgment rendered pursuant to their petition would be advisory only and not binding on any court in any future lawsuit. As shown by the record before us, the following occurred at the hearing on defendants' motion to dismiss:

"THE COURT: Well, if you should say to this court that the specific relief you desire is to tell these defendants not to talk about your client's married name, and

if by some other chance they are not involved in that—let's say you refiled your suit against the individual defendants and these defendants are not involved: would the relief have any effect at all, or would it be something—would it involve the other—

MR. CADY: It would be persuasive authority. It would not be binding authority. It wouldn't preclude another defendant. But certainly, in arguing the proposition before that court, the persuasiveness of the trial court's holding would certainly be in the picture. It's like using a case from Colorado in Missouri. I mean, a case in a court of record—it's persuasive. It's not binding on the courts of Missouri, at all, but certainly it can be persuasive and show the rule of logic, show the reasoning for the relief being asked."

Plaintiffs have exhibited no authority that even remotely suggests that a court is empowered by the declaratory judgment law to render a judgment, binding upon another court, directing it to follow some particular course of action or procedural rule in the trial of the case that is or may be pending before it. We find substantial authority to the contrary. Anderson, Actions for Declaratory Judgments, Vol. 1, Section 207, pp. 436–7 states as follows:

"Procedure Not Subject of Declaration. The declaratory judgment action cannot be invoked for the determination of procedural rules or rights, or even for a declaration of substantive rights involved in a pending suit. * * * The reason that a procedural matter in a pending suit or contemplated one will not be determined in a declaratory judgment action is that such questions should be determined by the court in which such action is pending or is to be filed."

To the same effect are statements found in 26 C.J.S. Declaratory Judgments § 41, p. 124, and 22 Am.Jur.2d. Sec. 16, pp 858, 9 Also see annotations in 135 A.L.R. 934 and 23 A.L.R.2d 1248, Sec. 2. A leading and

frequently cited authority on the present subject is the Kentucky case of Jefferson County ex rel. Coleman v. Chilton, 236 Ky. 614, 33 S.W.2d 601 (cited and quoted at length in the above cited annotation in 23 A.L.R.2d 1248), wherein a declaratory judgment was sought to determine questions relating both to substantive rights and procedural rules which had arisen in a pending action. Denying such declaratory relief, which the trial court had granted, the Court of Appeals of Kentucky reversed the judgment, respecting which the court said:

"It is true the purpose of the Declaratory Judgment Act was and is to guide parties in their future conduct to avoid useless litigation. If an actual controversy exists, and that controversy is of the justiciable character necessary to meet the demands of the act, the remedy may be invoked.

"But the act was not designed, and is not suitable, for the determination of the procedural rules, or the declaration of the substantive rights involved in a pending suit. Such decisions and declarations must be made in the first instance by the court whose power is invoked and which is competent to decide them.

"Every question submitted to the court can be decided by the trial court, in the original action, with a right of review in this court after final judgment in the trial tribunal. * * *

"Not one of the provisions of the Declaratory Judgment Act contemplates an action to determine procedure or to predetermine the decision of a trial court on a question properly presented to it. Litigation is already precipitated and pending, and the decision in this case would not prevent it or hasten its determination. * * *

"We are asked not to avoid a threatened lawsuit, but to advise on questions raised in a pending one; to decide in the appellate court in advance of a decision in the trial court, whether a cause of action exists, and in whose favor, who has the burden of proof, and when the statute of limitation begins to run. * * *

"The questions arising in that lawsuit, as in any other, must be decided by the court where the jurisdiction is vested. To utilize the Declaratory Judgment Act to obtain the direction of another court respecting the determination of issues in advance of a trial in the court of first instance would be a plain usurpation of authority. The jurisdiction of this court defined by the Constitution as appellate would be radically changed, if not revolutionized. * * *

"Upon both reason and authority we must decline to make a declaration here. It would forestall the freedom of action of the trial court where the original jurisdiction is vested.

It would, in a real sense, convert our jurisdiction from appellate into original by means of a circuitous procedure not contemplated by the Constitution.

It would not end the controversy, but merely establish our view of the legal and procedural principles to be applied. We may properly decide such questions upon an appeal after a final judgment.

It would invite similar suits every time a delay was desired or a difficulty encountered in a pending action. It would multiply rather than obviate needless litigation."

Other numerous cases to the same effect include: Oldham County v. Arvin, 244 Ky. 551, 51 S.W.2d 657; Railroad Commission v. Houston Natural Gas Corporation, Tex. Civ.App., 186 S.W.2d 117; Risman v. Van Sweringen Company, Ohio App., 179 N.E. 2d 117; Macht v. Hecht Co., 191 Md. 98, 59 A.2d 754; Buchman v. Taylor, 151 Conn. 209, 196 A.2d 111; Deen v. Weaver et al., Fla.Sup., 47 So.2d 539; Redmond v. Farthing, 217 N.C. 678, 9 S.E.2d 405; Pugh v. City of Topeka, 151 Kan. 327, 99 P.2d 862.

◼ Even if the trial court had not dismissed plaintiff's petition, but instead had assumed jurisdiction to render a declaratory

judgment laying down "guidelines" for trial of the death actions, the court could not properly have granted plaintiffs the relief they had prayed 'for. Clearly it would have been error for the court to have declared that knowledge of the widow's remarriage should be withheld from the jury in the trial of such actions. In our opinion such procedure would not be consistent with the high standards of integrity which the judicial process should maintain. The following quoted excerpt from Dubil v. Labate, 52 N.J. 255, 245 A.2d 177, decided by the Supreme Court of New Jersey, fully expresses our views:

"Our resolution of this issue does not dispose of this appeal. Though evidence of the plaintiff's remarriage is not relevant to the question of damages, we disagree with the trial court's attempt to suppress any mention of the remarriage. It would be offensive to the integrity of the judicial process if the plaintiff, after taking an oath to be truthful, were permitted to misrepresent her marital status to the jury. Of course, the defendants may not inquire into the details of the remarriage nor may they offer evidence concerning it. However, the desirable exclusion of evidence relating to the remarriage may not be carried to the point of affirmatively misrepresenting the truth to the jury. It seems to us that in the course of the trial of a wrongful death case, it would be virtually impossible to avoid mention of a remarriage without resorting to untruths. * * * Thus, we believe that—while evidence of the details of a remarriage, such as the earnings of the new spouse or the birth of a child, is to be excluded—the mere fact of a plaintiff's remarriage should not be kept from the jury. The trial judge should instruct the jury, at the beginning of the case, that the plaintiff has remarried but that this fact is to play no role in their determination of the pecuniary advantage which would have resulted from a continuance of the life of the deceased. We have recognized in another contest the desirability of honestly presenting certain facts to a jury with instructions that it would be improper for them to consider these facts in their deliberations. State v. White, 27 N.J. 158, 178–179, 142 A.2d 65 (1958). In the present situation we have no doubt that the jury, after proper instructions by the court, will be capable of returning a verdict uninfluenced by the plaintiff's remarriage."

*The judgment is affirmed.*

All concur.