261 A.2d 889.

JACQUELINE WIESEL, *Executrix vs.* ARMAND CICERONE *et al.*

FEBRUARY 17, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. These cases arise out of a motor vehicle accident on New London Avenue in the City of Cranston on January 9, 1964, between an automobile operated by Charles A. Wiesel and a tractor trailer truck owned by the

defendant O'Keefe Truck Rental Company, leased to the defendant What Cheer Bottling Company, and operated by the defendant Armand Cicerone.

On February 20, 1964, as a result of injuries sustained in the accident, Charles A. Wiesel died. He was survived by his wife, Jacqueline and two minor children. On February 26, 1965, his widow, in her capacity as executrix of his estate, brought these six actions for wrongful death under the provisions of G. L. 1956, chap. 7 of title 10, the "Death By Wrongful Act" statute. Subsequent to the commencement of these actions, but before the cases were reached for trial, she remarried.

A jury trial was claimed, the cases were consolidated for trial, and, after extensive preliminary procedures, the cases were reached for trial in the Superior Court on June 7, 1967, and again on February 27, 1969. On each occasion the trial justice declared a mistrial. The troublesome problem in each instance involved the questions of reference, during the voir dire examination of prospective jurors, to Jacqueline's remarriage and the admissibility of evidence during the trial relating to the remarriage. On March 27, 1969, after the two mistrials, the Superior Court, pursuant to the provisions of G. L. 1956, §9-24-27, as amended by P. L. 1965, chap. 55, sec. 41, certified the following questions to this court for our determination:

"(1) Where the plaintiff widow commenced a wrongful death action in her then surname, which was the surname of her late husband, but thereafter marries during the pendency of the action, should the trial judge require her to be sworn in her present name, or is it sufficient if the jury is advised of the name of the new husband and questioned as to possible relationship or acquaintanceship with him but without indicating his identity as the plaintiff's new husband or in any way disclosing that the plaintiff has again married?

"(2) Where the plaintiff widow conmmenced a

wrongful death action in her then surname, which was the surname of her late husband, but thereafter marries during the pendency of the action, should the name of the action be amended to that of her new surname and that information be made known to the jury, or is it sufficient if the jury is advised of the name of the new husband and questioned as to possible relationship or acquaintanceship with him but without indicating his identity as the plaintiff's new husband or in any way disclosing that the plaintiff has again married?

"(3) Where the plaintiff widow commenced a wrongful death action in her then surname, which was the surname of her late husband, but thereafter marries during the pendency of the action, should the jury be advised in any way of the fact of her remarriage, or is it sufficient if the jury is advised of the name of the new husband and questioned as to possible relationship or acquaintanceship with him but without indicating his identity as the plaintiff's new husband or in any way disclosing that the plaintiff has again married?

"(4) If the court should rule that the fact of remarriage is to be made known to the jury, and under these circumstances, plaintiff's counsel during voir dire refers to the name of the new husband and the names of those businesses he may be connected with and inquiry is made whether any of the jurors or any of the persons connected with them knew of, worked for or has any connection with those businesses, and the jurors all respond in the negative, may the fact that the new husband owns or controls any of such businesses and that he serves as president or officer of certain of said businesses * * * [be] made known to the jury by defendant's counsel?"

The questions certified present issues of first impression in this state.

The overwhelming weight of authority in this country, with which we agree, is that evidence of the remarriage of a surviving spouse or the possibility thereof should not be considered in arriving at the amount of damages in a wrong-

ful death action. See citations in *Dubil* v. *Labate,* 52 N. J. 255, 258-259, 245 A.2d 177, 179, and cases collected in Annot., 87 A.L.R.2d 252, 253 (1963). See *contra Jensen* v. *Heritage Mutual Ins. Co.,* 23 Wis.2d 344, 127 N.W.2d 228. The principal reason for this rule is that damages in such actions are determinable as of the date of death and are not to be affected by conditions arising thereafter. See *City of Rome,* 48 F.2d 333 (S.D. N.Y. 1930) and Annot., 87 A.L.R.2d 252, 253 (1963).

In this state the rule for measuring the damages recoverable under our statute is well established. Under §10-7-2 of our statute, as amended by P. L. 1958, chap. 151, sec. 1, although suit is brought by the executor or administrator, the amount recovered goes to designated survivors. As the court pointed out in *Burns* v. *Brightman,* 44 R. I. 316, 322, 117 A. 26, 28, the statute's purpose is "* * * to provide for and distribute to the designated relatives of deceased a legal compensation for the loss caused by the wrongdoer." And in *Walsh* v. *Bressette,* 51 R. I. 354, 357, 155 A. 1, 3, the court said:

> "The primary purpose of the statute is to provide a remedy for the loss sustained by the death of the person upon whom the beneficiaries were dependent. [cite omitted] The amount recovered is not administered as an asset of the deceased's estate but is directly distributed to those designated by the statute."

The loss sustained by the designated beneficiaries is the present value of the net amount remaining after the decedent's personal expenses are deducted from his income or earnings. To determine the damages it is necessary, therefore, (1) to ascertain the gross amount of the decedent's prospective income or earnings, (2) to deduct what the decedent would have had to expend as a producer, computed according to his station in life, his means and his personal habits, to acquire such income or earnings, and (3) to reduce the result to present value. *Dimitri* v. *Cienci*

& *Son,* 41 R. I. ·393, 103 A. 1029, overruling *Schnable* v. *Providence Public Market,* 24 R. I. 477, 53 A. 634; *Reynolds* v. *Narragansett·Electric Lighting Co.,* 26 R. I. 457, 59 A. 393; *McCabe* v. *Narragansett Electric Lighting Co.,* 26 R. I. 427, 59 A. 112. See *Gonyer* v. *Russell,* 160 F. Supp. 537 (D. R. I. 1958).

It is clear from the above that in this state, the earnings of the deceased are an essential factor in determining damages; that the cause of action arises and the spouse's rights are determined as of the date of the decedent's death; and that the amount recovered goes to the beneficiaries designated in the statute.

Accepting the majority view that evidence of the remarriage or possibility thereof of a surviving spouse should not be considered in arriving at the amount of damages in a wrongful death action, we are faced with the precise issue raised by the certified questions—whether any mention whatsover should be made of the remarriage of Jacqueline Wiesel either during the voir dire of the jury, or by reference to her new name during the trial, or in any other manner whatsoever.

The plaintiff argues for an exclusionary rule, while defendants contend that reference to the remarriage should be made but with proper limiting instructions to the jury that such is not to be considered as to damages.

The defendants contend that references to Mrs. Wiesel's remarriage should be allowed at the voir dire of the jury in order to test the qualification of prospective jurors. Furthermore, they argue that evidence of her remarriage should be allowed for purposes of impeaching her credibility. The defendants rely heavily on the recent New Jersey case of *Dubil* v. *Labate, supra,* where the court, after holding that "* * * the remarriage of a spouse is not a factor to be considered by the jury in their determination of the damages to be awarded for the wrongful death of

a deceased spouse." 52 N.J. at 261, 245 A.2d at 180, rejected an exclusionary rule in favor of a limiting instruction. The court said:

> "Though evidence of the plaintiff's remarriage is not relevant to the question of damages, we disagree with the trial court's attempt to suppress any mention of the remarriage. It would be offensive to the integrity of the judicial process if the plaintiff, after taking an oath to be truthful, were permitted to misrepresent her marital status to the jury. Of course, the defendants may not inquire into the details of the remarriage nor may they offer evidence concerning it. However, the desirable exclusion of evidence relating to the remarriage may not be carried to the point of affirmatively misrepresenting the truth to the jury. It seems to us that in the course of the trial of a wrongful death case, it would be virtually impossible to avoid mention of a remarriage without resorting to untruths. (Contrast the situation here with cases where the subject of a defendant's insurance coverage may be kept from the jury without resort to untruths. [cites omitted]) Thus, we believe that—while evidence of the details of a remarriage, such as the earnings of the new spouse or the birth of a child, is to be excluded—the mere fact of a plaintiff's remarriage should not be kept from the jury. The trial judge should instruct the jury, at the beginning of the case, that the plaintiff has remarried but that this fact is to play no role in their determination of the pecuniary advantage which would have resulted from a continuance of the life of the deceased. We have recognized in another context the desirability of honestly presenting certain facts to a jury with instructions that it would be improper for them to consider these facts in their deliberations. [cite omitted] In the present situation we have no doubt that the jury, after proper instructions by the court, will be capable of returning a verdict uninfluenced by the plaintiff's remarriage." *Id.* at 261-262, 245 A.2d at 180-181.

The argument against an exclusionary rule can be summarized as follows:

1. The integrity of the judicial process requires that

plaintiff's true name and remarriage be made known to the jury.

2. Such knowledge by the jury is essential for an adequate voir dire examination of prospective jurors.
3. Any risk of prejudice to the plaintiff is negated by proper instructions stating that the remarriage should have no part in their deliberations as to the amount of damages.
4. It must be assumed that a jury will follow the instructions of the court.

An exclusionary rule, however, would preclude any reference to or evidence of remarriage and by so doing avoid the danger that evidence of remarriage or the possibility thereof, irrelevant to the amount of damages recoverable, might unduly prejudice the jury, in arriving at the amount of damages, against the surviving spouse. Such a rule impliedly rejects the efficacy of a limiting instruction in such a case.

The plaintiff submits that the *Dubil* rationale should be rejected in favor of such an exclusionary rule. In support of her argument she cites cases decided by lower courts of California, Ohio and New York. While these decisions are not of the highest courts of the particular states and thus have not finality as to the law, nonetheless, in light of the dearth of authority on this subject, we feel it our duty to examine them, especially remembering that experience has taught that such decisions by knowledgeable and able judges of trial and intermediate appellate courts have played a great role in the ultimate determination of many a novel question by courts of last resort.

In *Benwell* v. *Dean*, 249 Cal. App.2d 345, 57 Cal. Rptr. 394 (Ct. App. 1967), the court affirmed the trial court's ruling denying the defendant the right to cross-examine plaintiff as to whether she had remarried and to her new married name. It based its affirmation on the ground that the cause of action arises at the time of decedent's death and damages are determinable as of the same time. The court said:

"Although the rule excluding evidence of remarriage may, at first blush, appear to be unreasonable and unjust, the rationale underlying the rule is best explained in *Reynolds* v. *Willis* (Del.) 209 A.2d 760 where it was stated that it was more reasonable to say that a defendant should not be allowed to profit by an actual or possible remarriage of the widow, just as he may not profit through monies coming to her from insurance policies purchased by her husband upon his own life, or from some other collateral source." *Id.* at 356, 57 Cal. Rptr. at 402-403.

In *Cherrigan* v. *City and County of San Francisco*, 262 Cal. App.2d 643, 69 Cal. Rptr. 42 (Ct. App. 1968), the court made the following pertinent statements as to its reasons for excluding any reference to the widow's remarriage:

"The exclusionary rule under attack, however, is an application of the broader doctrine that evidence of conditions occurring after a wrongful death is inadmissible on the issue of damages because the latter are to be determined only by conditions which existed at the time the death occurred." *Id.* at 652, 69 Cal. Rptr. at 48.

"A reference at the trial to the surname respondent bore as remarried, or a reference to her by that name, would obviously have prompted the inference that she had remarried although direct evidence of the fact was inadmissible. Accordingly, the trial court properly refused to require amendment of her complaint to show her 'true' name as remarried." *Id.* at 652-653, 69 Cal. Rptr. at 48.

"In short, the rule excluding evidence of respondent's marriage either applied or it did not. Since it did apply, as we have held, respondent was entitled to its full benefit. The trial court's actions concerning references to her name were therefore correct." *Id.* at 653, 69 Cal. Rptr. at 48-49.

It is to be noted that the court affirmed a ruling by the trial justice that prospective jurors could be asked on voir dire whether any of them knew the widow's new husband mak-

ing it clear he was to be identified by his name only and not as her husband.

An Ohio court in *Helmick* v. *Netzley,* 12 Ohio Misc. 97, 229 N.E.2d 476, 40 Ohio Op.2d 104, (C. P. Montgomery County 1967) was involved with a situation where the plaintiff, a remarried widow, had moved at a pretrial hearing that upon being sworn she be permitted to use her former name; that she be so identified throughout the entire trial; and that counsel for defendant be directed not to indicate the remarriage and to refer to her by her previous name.

The trial court granted the relief sought and in addition directed that she could not be cross-examined to show that her name was not Mrs. Birkhead and the defendant's counsel was expressly directed to refrain from making any disclosure of her new name. The court stated that its ruling was to prevent possible diminution of damages as a result of the remarriage and that such a disclosure would in all probability accomplish just that.

The court also directed that plaintiff's present husband, along with the other parties, would be presented to the jury for the purpose of determining whether any of the jurors knew plaintiff's present husband, without indicating his identity or in any way disclosing that she had married again.

The New York case cited by plaintiff is *Rodak* v. *Fury,* 31 App. Div.2d 816, 298 N.Y.S.2d 50. In that case, over objection of plaintiff's counsel, the trial judge required the plaintiff to be sworn in in her present name. The appellate court held that this was error. It said, in part:

> "It is a firmly established principle that the remarriage of a widow after the death of her husband is not taken into consideration in computing the damages recoverable for the wrongful death of the husband [cites omitted]. Irrespective of the general principle stated, we are of the view that defense counsel should not be precluded from inquiring of the prospective jurors whether they know or are related to a person having the name

of plaintiff's present husband [cites omitted]. Here we are not concerned with an issue as to mitigation of damages, but with one involving the qualification of the prospective jurors. Once a prospective juror admits such relationship, defense counsel may request disqualification for cause under CPLR 4110 (subd. [b])." *Id.* at 817, 298 N.Y.S.2d at 53-54.

The plaintiff contends that we should adopt the rationale of the California, New York and Ohio courts cited by her and implement the rule prohibiting any reference to remarriage by following the procedure suggested in those cases on the voir dire examination of prospective jurors. To further support her argument she refers to the rule prohibiting (1) disclosure of insurance of defendant, *St. Jean* v. *Lippitt Woolen Co.,* R. I., 69 A. 604; *Lavigne* v. *Ballantyne,* 66 R. I. 123, 17 A.2d 845; *Walling* v. *Jenks,* 59 R. I. 129, 194 A. 600; or (2) collateral benefits received by the plaintiff, *Oddo* v. *Cardi,* 100 R. I. 578, 218 A.2d 373; or (3) reference to the payment of workmen's compensation benefits, *Deighan* v. *E.Turgeon Construction Co.,* 95 R. I. 42, 182 A.2d 446, limited in application to its facts by *Storin* v. *Masterson,* 103 R. I. 246, 236 A.2d 249. She argues that the same underlying reason for the exclusionary rule in those cases, namely the risk of improper influence of the jury resulting from irrelevant and extraneous matters, applies to cases involving the remarriage of a spouse in a wrongful death action.

The defendants submit that the California, New York and Ohio cases cited by plaintiff all involved statutes differing materially from our own in that in those states the damages in a wrongful death action are measured by the loss to the *survivors,* whereas in this state the sole measure is the loss to the decedent's *estate.* Assuming without deciding that those statutes do so differ from ours, we fail to see how such a difference has any effect upon a resolution of the issue before us. As we have already pointed out, under §10-7-2 of our statute, although suit is brought in the name

of the executor or administrator, the amount recovered goes to the survivors designated in the statute, the persons for whose benefit the action is brought.

The defendants also argue that the exclusion of a widow's new name and marital status cannot be equated with the policy of our courts to exclude references to liability insurance in tort actions, see *Walsh* v. *Carroll*, R. I., 169 A. 743, and *Lavigne* v. *Ballantyne, supra,* because, as pointed out in *Dubil* v. *Labate,* 52 N. J. at 262, 245 A.2d at 180, the exclusion of insurance references may be done "without resort to untruths" and thus may be sanctioned.

It is our opinion, based on a careful analysis of the problem, that justice can best be served in a case such as this by excluding all reference to or evidence of the widow's remarriage during all stages of the proceedings.

We agree with the concern of the New Jersey court, as expressed in *Dubil,* for the maintenance of the integrity of the judicial process at all times. But we must bear in mind, and never lose sight of the fact, that the primary purpose of a judicial hearing is to decide cases on the basis of relevant evidence by ascertaining the truth, unfettered by irrelevant and extraneous evidence which might confuse or unduly prejudice the triers of fact against either of the parties. It is undisputed that the remarriage of a widow in this type of a case has no bearing on the measure of damages and is, therefore, absolutely irrelevant on that issue. Her new name, or her remarriage, is of no concern to the jury in determining the amount of damages, if any, due as a result of her husband's death. Since the measure of damages is fixed as of the time of decedent's death, and inasmuch as conditions happening thereafter have nothing at all to do with the question of damages, we fail to see how the integrity of the judicial process is endangered by a hearing based only on relevant evidence.

To inject information concerning a widow's remarriage

would, in our judgment, not only introduce irrelevant matter, but what is more important, it would be admitting evidence which could very well have a tendency to confuse the jury and adversely prejudice the plaintiff. This would in our opinion be putting a premium on form and overlooking substance. Nor do we believe that an instruction to the jury at the inception of the trial, or during the trial, saying that evidence of remarriage is not to be considered by them, will outweigh the likelihood of misuse of such evidence by the jury. See *Eichel* v. *New York Central R.R.*, 375 U. S. 253, 84 S. Ct. 316, 11 L.Ed.2d 307. For the same reason, neither do we believe that the presumption that the jury will follow the trial judge's instructions will outweigh the likelihood of misuse of such evidence. Compare *Walsh* v. *Carroll, St. Jean* v. *Lippitt Woolen Co., Lavigne* v. *Ballantyne, Walling* v. *Jenks, Oddo* v. *Cardi, Deighan* v. *E. Turgeon Construction Co.,* all *supra.* Compare also *Harrod* v. *Ciamciarulo*, 95 R. I. 504, 188 A.2d 459, *Ronan* v. *J. G. Turnbull Co.*, 99 Vt. 280, 131 A. 788, *Simpson* v. *Foundation Co.*, 201 N. Y. 479, *Brown* v. *Walter*, 62 F.2d 798 (2d Cir. 1933).

The problem of providing for an adequate voir dire examination of prospective jurors presents a different question. We believe this can be accomplished without doing violence to the rule prohibiting all references to or evidence of the remarriage of the plaintiff and, at the same time, providing for the selection of a fair and impartial jury, thus protecting the rights of all parties without prejudicing the rights of any by the introduction of irrelevant evidence. The trial court has wide discretion in conducting a voir dire. See *State* v. *Greene*, 74 R. I. 437, 60 A.2d 711, *State* v. *Hathaway*, 52 R. I. 492, 161 A. 366. Possible witnesses, relatives, including the widow's new husband but not referring to him as such, or persons connected with the plaintiff could be presented to the prospective jurors for the purpose of deter-

mining whether the jurors know such persons. Or the names of such persons as well as the names of different business concerns that any of these persons might have been connected with could be brought to the attention of the prospective jurors for the purpose of finding out whether any of them had any contact, direct or indirect, with such persons or businesses. Other legitimate inquiries could be made on the voir dire, without referring to the remarriage in any way, for the purpose of excluding from the panel persons who would act from prejudice, interest or lack of qualification.

> Mention has been made by defendants in their brief, that " * * * plaintiff's remarriage in this case has a direct bearing on the plaintiff's credibility, in view of her representations (between the date of her remarriage and the initial raising of this issue before Judge Carrellas) under oath that she was then 'Jacqueline Wiesel.' "

In view of our conclusion excluding any reference to plaintiff's new name at any stage of the proceedings, there is no merit to defendants' assertion. The record shows that plaintiff commenced this action in her capacity as executrix prior to her remarriage, and there is no reason why she should have changed the name of the case thereafter.

Accordingly, in addition to what we have already stated, we answer the first three questions as follows.

We hold that the trial judge should not require plaintiff to be sworn in in her present name, that the name of the action should not be amended to that of her new surname, that this information should not be made known to the jury, and that the jury should not be advised in any way of the fact of her remarriage; but it is sufficient if the jury is advised of the name of the new husband and questioned as to possible relationship or acquaintanceship with him, without indicating his identity as the plaintiff's new husband or in any way disclosing that the plaintiff has again married.

Our disposition of the first three questions makes it unnecessary for us to consider the fourth.

The cases are remitted to the Superior Court for further proceedings in accordance with this opinion.

*Abedon, Michaelson, Stanzler & Biener, Richard A. Skolnik,* of counsel, *Phillips, Nizer, Benjamin, Krim & Ballon,*

*Theodore Friedman,* of counsel, for plaintiff.

*Gunning & LaFazia, Bruce M. Selya, Raymond A. LaFazia,* of counsel, for defendants.