Johnson v. Fletcher Allen Health Care, No. S1508-08 CnC (Crawford, J., Jan. 31, 2012)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

SUPERIOR COURT                         CIVIL DIVISION
CHITTENDEN UNIT                        DOCKET NO.: S 1508-08 CnC


BRYAN JOHNSON as Administrator

v.

FLETCHER ALLEN HEALTH CARE

### DECISION ON MOTION IN LIMINE REGARDING
### EVIDENCE OF REMARRIAGE

This is a wrongful death case.   In addition to damages for the loss of his wife's companionship and affection, the plaintiff intends to present a claim for the loss of her household services.  An economist has calculated this loss at approximately $650,000.  This figure represents the annual value of these services over the actuarial life expectancy for Ms. Johnson, adjusted for inflation and reduced to present value.

Ms. Johnson died in 2006.  Mr. Johnson has recently remarried. The plaintiff seeks to exclude any mention of remarriage from testimony or other evidence.  The defense wishes to introduce evidence of remarriage both to show mitigation of the claim for household services and, more generally, to reduce the claim for loss of companionship and the other subjective components of the wrongful death claim.

This issue has not been resolved by the Vermont Supreme Court.

Other jurisdictions have taken three approaches:

1.  The traditional analysis is that wrongful death damages are determined at the time of death and that a subsequent remarriage is irrelevant.  See *Estate of Spinoza v. International Harvester Co*., 621 F.2d 1154 (1st Cir. 1980)(construing N.H. law); *Sanderson v. Steve Snyder Enterprises, Inc*., 491 A.2d 389 (1985)(construing Ct. law); Speiser, S., *Recovery for Wrongful Death and Injury*, Clark, Boardman, Callaghan 1991, § 6.12, p. 33  (3rd Ed.).

2.  Other states have concluded that remarriage is relevant to the calculation of damages, especially when the plaintiff opens the door by introducing evidence of the financial value of lost services.  *Jensen v. Heritage Mutual Ins. Co.,* 127 N.W. 2d 288 (Wis. 1964); *Pena v. Northeast Ohio Emergency Affiliates*, 670 N.E. 2d 268 (Ohio 1995).

3.  New Jersey has chosen a compromise.  The jury is informed that the spouse has remarried, but that they should not consider remarriage in determining the amount of damages.

*Dubil v. Labate*, 52 N.J. 255 (1965); *Cipollone v. Liggett Group*, 1987 WL 14666 (D.N.J. Oct. 27, 1987).

The court starts its analysis by noting that two possible outcomes are inappropriate. The first is that the plaintiff introduces evidence of many decades of lost services without evidence of remarriage. This would create a false picture of the plaintiff's pecuniary loss. By choosing to introduce evidence of the annual cost of lost services, the plaintiff opens the door to evidence of mitigation. The economist's tables will show a loss of services for more than 40 years. If similar services are coming from another person, it is only fair for the jury – considering a claim in excess of half a million dollars – to consider that information.

Another possible outcome is equally inappropriate. The subjective elements of the loss of a spouse –companionship, love, affection, and guidance – are qualitatively different from the loss of help around the house. They cannot be estimated by reference to wages paid to housekeepers in the relevant labor market. They are not replaced by someone else who can perform the same tasks. The loss of affection and companionship is fixed at the time of death. It may be experienced over many years, but it is a basic human truth that any widow or widower never replaces their lost spouse. This is hardly a new discovery – it underlies the traditional rule in the majority of states which prohibits evidence of remarriage.

There are many justifications for the rule. Some are theoretical. The wrongful death claim is thought to be like an asset of the estate which is fixed in value at the time of death. Some operate by analogy. The comfort derived from remarriage is likened to collateral source payments by life insurance or other first-party coverage – the result of an action taken by the plaintiff which should not benefit the tortfeasor. A third justification is that it is speculative or inappropriate to subtract the companionship afforded by the second spouse from the loss of the first.

The court recognizes that there is a degree of artificiality in the majority rule of non-disclosure of remarriage. As defense counsel points out, the life of a person who remarries is – all things going well – happier than that of a person who does not. But the measure of damages for wrongful death has other artificial aspects. We do not permit consideration of the grief and pain experienced through bereavement. The wrongful death statute has never provided a comprehensive system of compensation. It makes no attempt to restore the widower to the position he enjoyed before his wife's death. Instead, recovery is limited to the loss of positive contributions by the decedent during her lifetime. A widower may – indeed, should – find other ways to find companionship, guidance, and affection through remarriage, through friendship with others, through renewed contact with his children, through hobbies and activities or through any of the other means open to people to rebuild their lives. None of these steps address or reduce the subjective elements of the loss of his spouse.

The court is satisfied that the better rule is to prohibit evidence or argument of mitigation of the subjective elements of the recovery by remarriage. Defense counsel has indicated that he only wishes to touch lightly upon this subject. The court will go a step further and prohibit it altogether except with respect to the claim for lost services. The lost services claim is fundamentally different. As this case demonstrates, it is a loss which can be quantified by an economist. The services can be performed by others. Unlike the loss of a loving companion, the loss of help around the house can be mitigated.

This analysis leaves the problem of how to deal with the lost services claim. Through the magic of economic testimony, the role of cook and cleaner and carer for children has been reduced to a substantial present value figure. If the claim is limited to the years before remarriage, then the plaintiff's remarriage is irrelevant and will not be mentioned by either party. If the claim remains a lifetime claim, then the fact of remarriage comes into the case for purposes of the loss of household services only. This is a strategic choice to be made by the plaintiff. It must be disclosed prior to opening statements so that both sides understand whether remarriage is in the case or out.

## CONCLUSION

The motion in limine with respect to remarriage is granted in part for the reasons set out above.

Dated: 1/26/12

_____
Geoffrey Crawford,
Superior Court Judge

3