STUIVE *v.* PERE MARQUETTE RAILWAY CO.

1. Appeal and Error—Negligence—Evidence—Contributory Negligence.

Verdict of jury that defendant railroad company was negligent is accepted on appeal where there is evidence to support such finding and defendant seeks reversal on ground that plaintiff motorist was guilty of contributory negligence as a matter of law.

2. Same—Directed Verdict—Evidence.

In considering a defendant's motion for a directed verdict, the plaintiff is entitled to have the evidence considered in a light most favorable to him.

3. Automobiles—Sudden Emergency—Time for Reaction—Contributory Negligence.

When a motorist is faced with a sudden emergency, time must be allowed for him to appreciate the danger and react as to how to avoid it before being held guilty of contributory negligence.

Standard of conduct in an emergency not created by plaintiff's antecedent negligence, see 2 Restatement, Torts, § 296; conflicting claims of parties presented a question for the jury, see § 434, comment c; standard of conduct defined, see §§ 284, 285; causal relation between harm and negligence, see § 465.

4. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Contributory negligence is ordinarily a question of fact for the jury, if there is one, unless the evidence so plainly and clearly establishes such contributory negligence that no reasonable man could come to any other conclusion.

5. AUTOMOBILES—RAILROADS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Question of contributory negligence of eastbound motorist on dry blacktop pavement at 6:52 p.m. on a bright April day who saw that he approached a two-track railroad crossing and when 29 feet from nearest rail could see to the right some 250 feet but saw no train and looked to left from which direction he might expect a train to approach on the near tracks and then looked to right when his front bumper was 16 feet from nearest rail but was unable to stop his car then proceeding 10 or 11 miles an hour before it collided with train approaching from right on near track, was properly left to jury.

6. DAMAGES—DOCTOR'S LOSS OF WIFE'S SERVICES.

In doctor's action against railroad company for death of wife, instruction limiting recovery for value of her services as to usual household duties to time when he remarried was proper.

7. HUSBAND AND WIFE—SERVICES OF WIFE—COMMON LAW—MARRIED WOMEN'S ACTS.

While at common law a husband was entitled to the person and labor of his wife whether labor was performed for the husband or others, since the enactment of the so-called married women's act she alone was entitled to recover for services she rendered to others than her husband (3 Comp. Laws 1929, § 13061).

8. DAMAGES—SERVICES OF DOCTOR'S WIFE AT OFFICE—EXPECTANCY.

It was not error to allow plaintiff, a doctor, as special administrator of the estate of his wife who was instantly killed in railroad crossing accident, to recover for present value of services she had rendered him outside of the family relation, as receptionist, stenographer, bookkeeper, and practical nurse for a period equal to plaintiff's life expectancy.

9. SAME—EXCESSIVE VERDICT—DEATH OF DOCTOR'S WIFE.

Verdict of $7,000 in action by doctor as special administrator of the estate of his wife who was instantly killed in railroad crossing accident *held*, not excessive where it appears that notwithstanding he remarried 11 months later, the deceased

had performed services for plaintiff outside the marital relation as receptionist, stenographer, bookkeeper, and practical nurse and he had an expectancy of 27.45 years. ٭

10.ᐧ EVIDENCE—PHOTOGRAPHS.

Admission of photographs of scene of railroad crossing accident taken a year and a half later when there was snow on the ground and condition of foliage was different was not error where, upon admission, it was agreed that such differences existed.

11. SAME—REMOTE LETTER—CHANGE OF CONDITIONS.

In doctor's action against railroad for death of wife who had worked for her husband outside of home as receptionist, stenographer, bookkeeper and practical nurse, it was not error to exclude letter from deceased to her sister postmarked some two years and a half before fatal accident and which showed a rift in marital relations between plaintiff and deceased since it was too remote and there had been a change of conditions since the letter had been written.

NORTH, BUTZEL, and REID, JJ., dissenting.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted January 9, 1945. (Docket Nos. 13, 14, Calendar Nos. 42,845, 42,846.) Decided April 9, 1945. Rehearing denied May 14, 1945.

Separate actions of case by Dr. Derk Stuive, individually and as special administrator of the estate of Leonia K. Stuive, against Pere Marquette Railway Company to recover damages suffered when his automobile was struck by defendant's train. Cases consolidated. Verdicts and judgments for plaintiff. Defendant appeals. Affirmed.

*Carl B. Grawn* and *Clifford M. Toohy*, for plaintiff.

*John C. Shields* and *William R. Althans*, for defendant.

SHARPE, J. These two cases arise out of a collision between an automobile driven by Dr. Stuive

and a train of defendant. In one case, Dr. Stuive brought an action as special administrator of the estate of his wife, Leonia K. Stuive, who was instantly killed in the collision. In the other case he brought an action in his individual capacity for damages. The causes were consolidated for trial and submitted to a jury who returned a verdict for plaintiff in each case.

On April 26, 1941, about 6:52 p. m., plaintiff and wife were driving easterly on Silver Lake road in Livingston county in the vicinity of the crossing of that road and the Pere Marquette railroad tracks. It was a clear day and the sun was shining. The black-top pavement was dry. As plaintiff approached the tracks and while 150 feet away, he saw a railroad crossarm sign which bore the words "Railroad Crossing—Two Tracks." At this time plaintiff reduced the speed of his car to about 12 or 15 miles per hour. He noticed an embankment on his right which curtailed his view of trains approaching from his right. When he was at a point where the front bumper of his car was 29 feet from the track, the speed of his car had been reduced to between 10 and 11 miles per hour. At this time a freight train of defendant was approaching the crossing from plaintiff's right at a speed of 45 to 50 miles per hour.

As plaintiff approached the tracks he looked to his right, saw no train approaching, looked to his left, saw no train, and then looked to his right, saw the train, tried to bring his automobile to a stop but failed to do so and collided with the freight train. As a result of this collision, plaintiff's wife was instantly killed and plaintiff severely injured.

The causes came on for trial and at the close of plaintiff's proofs, the defendant moved for a directed verdict based upon the alleged contributory negligence of plaintiff. The trial court took the

motion under advisement under the Empson act[*]
and defendant proceeded with its proofs. At the
close of all testimony, the defendant renewed its
motion for a directed verdict and decision was
reserved. The jury brought in a verdict for plain-
tiff in each case. Subsequently, defendant made a
motion for judgment notwithstanding the verdict
in each case. These motions were denied by the
trial court.

Defendant appeals and urges that the trial court
was in error in his failure to find that plaintiff was
guilty of contributory negligence as a matter of law.
In our discussion of this question we shall accept
the verdict of the jury on the negligence of defend-
ant. There was evidence to support such a finding
of fact.

In considering defendant's motion for a directed
verdict, we have in mind that plaintiff is entitled
to have the evidence considered in a light most
favorable to him. Guided by this rule we find that
when plaintiff approached the crossing, he listened
but heard no bell ringing or whistle blowing. He
heard no noise of a train. He saw two tracks.
When he was at a point 150 feet from the crossing,
he slowed down to 12 or 15 miles per hour. When
he reached a point 100 feet from the crossing he
slowed down to 10 to 12 miles per hour. When
the front bumper was 29 feet from the nearest rail
and he was seated 8 feet back therefrom, the car was
moving between 10 and 11 miles per hour. At this
point, he listened for the approach of a train, but
heard nothing to indicate that a train was approach-
ing. At this point he could see the tracks to his
right for a distance of 250 feet, but saw no train.
He looked to the left and saw no train. He again

---

* 3 Comp. Laws 1929, § 14531 et seq., as amended by Act No. 94,
Pub. Acts 1939 (Comp. Laws Supp. 1940, § 14531, Stat. Ann. and
Stat. Ann. 1944 Cum. Supp. § 27.1461 et seq.).—REPORTER.

looked to the right and saw the train at which time his front bumper was 16 feet west of the nearest rail. Because of the two sets of tracks, he did not expect a train approaching from his right would be on the westerly set of tracks.

Plaintiff relied upon *Jones* v. *Railroad Co.,* 303 Mich. 114. In that case plaintiff's decedent, driving an automobile in the daytime, approached a five-track railroad crossing while traveling at a rate of speed of 25 miles per hour. He slowed down to about 20 miles per hour and continued to cross at that speed. His view of the tracks in the direction from which the train was approaching was obstructed by buildings and fences until he was 39.2 feet from the second track where the collision took place.

We there said:

"In the case at bar, accepting the testimony most favorable to plaintiff, the driver could not have stopped in time to avoid the collision after reaching the point of clear view of the approaching train. The trial court, in the instant case, in view of the fact that the bell and flasher-lights were not working, that the train failed to give precautionary warning until practically at the crossing, that an obstruction existed up to such a point that the plaintiff's decedent, even though he did then see the train, might not be able to stop before coming onto the tracks due to time necessary for human reaction, saw fit to present the situation to the jury for determination as a question of fact on the problem of decedent's contributory negligence. To do so was not error."

We also said in that case:

"When sudden emergency arises, time must be allowed the driver to appreciate the danger and react as to how to avoid it."

In *Reedy* v. *Goodin,* 285 Mich. 614, we said:

"Contributory negligence is ordinarily a question of fact for the jury, if there is one, unless the evidence so plainly and clearly establishes such contributory negligence that no reasonable man could come to any other conclusion."

See, also, *Ortynski* v. *Railroad Co.,* 307 Mich. 61.

We have in mind that when plaintiff approached the crossing he saw two sets of tracks; that at a point 29 feet from the nearest rail of the track he could see to his right a distance of 250 feet, but saw no train; that he then looked to his left, from which direction he might also expect a train to be traveling on the westerly set of tracks; and that he again looked to the right at which time the front bumper of his car was 16 feet from the nearest rail and his car was traveling 10 to 11 miles per hour. Under these circumstances the question of plaintiff's negligence was a proper subject for the consideration of a jury.

It is urged that the trial court erred in permitting plaintiff as special administrator to recover for loss of services of his wife, within and without the marital relation, beyond the time of his remarriage.

It appears that about two weeks before the fatal accident, the deceased, Leonia K. Stuive, moved from Chicago to live with her husband in Detroit. In Chicago she had been employed as a clerk by Sears-Roebuck & Company for five years. Eleven months after her death, plaintiff remarried. The trial court in submitting the cause to the jury, gave them the following instructions:

"I charge you that you are to determine the present value of the fair weekly value of the services rendered by Mrs. Stuive to her husband for his expectancy of life. * * * For example, if you

find that the services of Mrs. Stuive, which she was giving while in Detroit, entirely disregarding whether she may or may not have given him services while they lived in Chicago, would be $35 a week, or 52 times $35, or $1,820 a year, and that her services would continue to be of that value during the period of his life expectancy, which I have already charged you, the mortality table is 27.45 years, you are to take, of course, her health in the meantime into consideration, the older she would get and her ability to perform the type of services which have been testified to, such as practical nursing and receptionist and stenographer and looking after the books and receiving the patients and matters of that kind; you are to give the administrator of the estate of Leonia K. Stuive, deceased, if you decide he is entitled to anything, the value of the services which he would ordinarily get from Mrs. Stuive until next year, the year thereafter, the year after that and so on, as long as you find from the proofs in the case she lived or would live and continue to render such services.   *   *   *

"I further charge you that under the statute law of this State, that a husband or surviving spouse is not entitled to recover for the loss of consortium, and that consortium means the companionship and relationship as it normally exists between husband and wife in the home. For services in connection with the making of the home, housekeeping and general duties performed by a wife for her husband and home, the husband is entitled to recover through the administrator, here in this case, Dr. Derk Stuive himself, provided however, that since the testimony is that he has remarried 11 months after the death of the first wife, that should be taken into consideration in determining damages pertaining to the loss of services in connection with the making of the home; as the testimony here is undisputed that the second wife does make a home and it is also undisputed that she does not in any way perform the services which the first wife performed

relating to the business side. As to the services rendered Dr. Stuive in his profession, the remarriage in no way returns to him his lost services; the testimony being undisputed that the present Mrs. Stuive does not in any way perform any services such as receptionist, stenographer, bookkeeper and practical nurse."

The particular objection raised to these instructions is that:

"1. The jury was allowed to award plaintiff for alleged loss of household services of his wife Leonia after his remarriage.

"2. The jury was allowed to award plaintiff damages for the loss of Leonia's services as an office attendant, receptionist, nurse, et cetera, on the basis of services paid to experienced persons and although these claimed services were rendered to plaintiff outside of the family relation."

In our discussion of these objections we note that Leonia Stuive during the two weeks she lived with plaintiff in Detroit performed certain office duties as well as performing the usual household duties, while plaintiff's present wife does not render any office services.

We have examined the instructions given the jury and conclude that they were informed that the loss of the wife's services as a housekeeper was limited in time up to the time of plaintiff's remarriage.

Was it error to allow plaintiff as special administrator to recover for the services rendered by deceased outside of the marital relation for a period equal to the life expectancy of plaintiff?

In *Gregory* v. *Oakland Motor Car Co.,* 181 Mich. 101, 110, we said:

"We think the statute (married women's act)* means that all earnings acquired or service per-

---

* See 3 Comp. Laws 1929, § 13061 (Stat. Ann. § 26.171).—RE-PORTER.

formed by her as the result of her personal efforts in any separate business carried on by her in her own behalf, or any services performed by her for others than her husband, belong to her; but that her husband is entitled to her labor, companionship, society, and assistance in the discharge of those duties and obligations which arise out of the marriage relation, and that these belong to him. Where she has a separate business the wife may recover for loss of time as if she were sole."

See, also, *In re Moon's Estate*, 219 Mich. 104.

In *Lindenfeld v. Michigan Interstate Truck Co.*, 274 Mich. 681, we said:

"The court very plainly charged that the measure of damages is the pecuniary or financial loss to the beneficiaries of deceased, computed upon the value of her services to them, less the cost of her keep, and that the jury should take into consideration the life expectancy of both deceased and her husband, the effect of her growing age upon her ability to render household services, possibility of remarriage of the husband, and other considerations."

In *Standen v. Railroad Co.*, 214 Pa. 189 (63 Atl. 467, 6 Ann. Cas. 408), it is said:

"The husband was permitted, against the objection of the defendant, to recover for the loss of the value of his wife's services to him in his business as a florist. This is assigned for error. * * *

"At common law, the husband, during the existence of the marital relations, was entitled to the services and earnings of his wife. It was held by this court that at common law the husband was entitled to the person and labor of his wife and the benefits of her industry and economy: *Raybold v. Raybold*, 20 Pa. 308. He also had a right to the joint earnings of himself and wife in his business: *Bucher v. Ream*, 68 Pa. 421. If she engaged in service outside the family he was entitled to her

earnings: *Hackman* v. *Flory,* 16 Pa. 196. If his wife was injured by the negligence of another and her earning power was thereby diminished, the negligent party was responsible to the husband for the loss. It was conceded by the appellant company that such were the common-law rights of the husband to his wife's services and earnings, but it is claimed that under the present legislation in this State a married woman is entitled to her earnings while engaged in her husband's business and, to that extent, the common-law rule is abrogated. But this contention is based on an erroneous interpretation of the present, as well as of the past, legislation affecting the rights of married women. That legislation vests in a married woman all earnings acquired by her in carrying on any separate or independent business or in performing any labor or services on her sole and separate account. This changed the common-law rule and takes such earnings from the husband and gives them to the wife absolutely. The legislation, however, does not affect or change the rule as to the earnings of the wife acquired in her capacity as wife for services rendered about her household duties or when assisting her husband in his business. In the absence of an agreement to the contrary, such earnings continue to belong to the husband, and neither his wife nor her creditors can assert a right to them by an action at law or otherwise. It is only when she engages at labor or in business in her own right and not as wife, that the statute declares that the accumulations or earnings from that labor or business shall be her property and belong to her and not to her husband or his creditors. It was not the intention of the legislation to deprive the husband of his common-law right to the earnings or services of his wife, rendered as wife, by her in and about either their domestic matters or his business affairs. For such services, she has no legal recourse against him or his estate.''

We find no error in the instructions given to the jury on this issue, nor can we say that their verdict of $7,000 to plaintiff as special administrator for loss of services is excessive.

Defendant also claims error in the refusal of the court to withdraw from the consideration of the jury two photographs and a map of the crossing in question. The photographs were taken November 30, 1942, and it is claimed they did not show the condition of the crossing on April 26, 1941. It appears that at the time these photographs were admitted in evidence it was agreed that they did not show conditions as they existed on the date of the accident in that there was no snow on the ground at the time of the accident and the condition of the foliage was different. Under such circumstances there was no error in the admission of the photographs and the map.

It is also urged that it was error to refuse to admit a letter written by deceased to her sister postmarked Chicago, November 25, 1938. The letter in substance showed a rift in the marital relations between plaintiff and deceased. The trial court held that the letter was too remote and that after it had been written, conditions changed between plaintiff and deceased. The change in conditions, as suggested by the trial judge, finds support in the fact that in April, 1941, deceased came to Detroit to live and work with plaintiff. We find no error in refusing to admit the letter in evidence.

We have examined other claims for a new trial expounded by defendant, but do not find in any of them material upon which a new trial should be granted.

The judgment rendered in favor of plaintiff in his individual capacity in the amount of $3,800 and the judgment for plaintiff as special administrator

in the sum of $7,000 are likewise affirmed. Plaintiff may recover costs.

STARR, C. J., and WIEST, BUSHNELL, and BOYLES, JJ., concurred with SHARPE, J.

REID, J. (*dissenting*). I cannot concur in the opinion of Mr. Justice SHARPE.

The plaintiff driver with his front bumper at 29 feet from the nearest rail could have seen the train if it were within 250 feet from him. He was then going about 10 or 11 miles an hour. The train was approaching at 45 to 50 miles an hour, or about 4½ or 5 times plaintiff's speed. If 29 feet is multiplied by 4½ or 5, the result would show that when plaintiff's front bumper was 29 feet from the rail the train was 131 to 145 feet away from the crossing. Upon arriving at a point 150 feet from the nearest rail, plaintiff knew the location of the crossing and reduced his speed.

Plaintiff claims that when he glanced to his right at a point when his front bumper was 29 feet west of the tracks, no train was then visible. Plaintiff's own testimony is that when his front bumper was 29 feet from the rail he could see 250 feet down the tracks. Other testimony and the photographs indicate that the train was visible at a greater distance. Plaintiff's testimony that he did not see the train when his front bumper was 29 feet from the tracks merely proves that he looked indifferently. To hold on the basis of such testimony that the train was not then in sight would require a finding that this freight train with 40 loaded cars came at a speed greater than 90 miles per hour. Plaintiff seeks to excuse his failure seasonably to see the train by saying he was laboring under the erroneous assumption that if any train were approaching on the

nearer track it must be coming from his left and in consequence he gave that direction his primary attention. That error on his part does not excuse his failure to make certain that he could safely cross before attempting to do so. He was under the necessity of looking in each direction while it was still in his power to avoid the collision. *Rosencranz* v. *Railroad Co.*, 244 Mich. 137; *Benaway* v. *Railway Co.*, 296 Mich. 1.

Plaintiff relies on *Rogers* v. *Railroad Co.*, 289 Mich. 397, in which case the plaintiff driver of an automobile was directed by a flagman to enter a crossing where there were three tracks, was thrown into confusion by the unexpected approach of a train and could not stop seasonably after first seeing the train. We held in that case that it was a jury question whether plaintiff exercised ordinary diligence in attempting to cross. No such direction to cross was given the plaintiff in the instant case.

Plaintiff also relies upon *Jones* v. *Railroad Co.*, 303 Mich. 114. At p. 119 of that decision we say:

"The driver could not have stopped in time to avoid the collision after reaching the point of clear view of the approaching train."

In the case at bar, plaintiff swears that he quickly looked to his right when 16 feet from the tracks, saw the train, immediately applied his brakes and brought his automobile to a standstill short of the tracks and so that it was only a protrusion of some part of the train that struck his car. It thus becomes very evident from plaintiff's own testimony that if he had observed the train when his front bumper was 29 feet from the nearest rail, he could have avoided the collision. This case is thus differentiated from the *Jones Case, supra.*

Plaintiff is guilty of contributory negligence as a matter of law. The judgment in each case should

be reversed without a new trial, with costs to defendant in each case.

NORTH, J., concurred with REID, J.

BUTZEL, J. (*dissenting*). I concur in the opinion for reversal. A pole with a large disk with the letters "R. R." stood at the side of the road 285 feet from the track as a warning. The disk could readily be seen by the driver of an approaching car at a greater distance. Nevertheless plaintiff testified he did not become aware of the fact that he was approaching a railroad crossing until he was 150 feet from the track, and that then his view down the track was shut off by an embankment until he was 29 feet from the track. His expert witness, a civil engineer, indicated, however, that by actual measurements, when 40 feet from the crossing, there was an unobstructed view of 273 feet down the track. Even making some allowance for reaction time, and there would be but very little with the peripheral view plaintiff would have, as the testimony shows he had a clear view ahead and on each side, he was guilty of contributory negligence. Each case must be decided on the facts. In *Jones* v. *Railroad Co.,* 303 Mich. 114, cited by plaintiff, the accident occurred on an important highway in Detroit where the view was shut off, and also the flashlight signal, upon which one had a right to rely as a warning of the approach of trains, was out of order and not working. There thus was a jury question as to whether or not there was contributory negligence. Again in *Ortynski* v. *Railroad Co.,* 307 Mich. 61, also cited by plaintiff, there was an obstructed view at a protected crossing, but the watchman had signaled the automobile to go ahead. Again there was a jury question. In *Silanpa* v. *Thomson,* 309 Mich. 326,

the railroad had ceased operations on the spur line for a considerable period owing to the shutdown of a mine, there was no watchman at the crossing as the law provided, and plaintiff had some right to assume that no trains were running. There was a jury question. In the instant case, the testimony produced on behalf of plaintiff shows that plaintiff was guilty of contributory negligence as a matter of law.

The judgment should be reversed without a new trial, with costs to defendant.

NORTH, J., concurred with BUTZEL, J.