## WOOD v THE DETROIT EDISON COMPANY

Docket Nos. 61433, 61489. Argued October 2, 1979 (Calendar No. 11).
—Decided July 16, 1980.

Cecelia Wood, the widow of Raymond Wood, who died following
injuries sustained when the scaffold on which he was working
collapsed, brought an action under the wrongful death act
seeking damages for loss of his society and companionship
against Detroit Edison Company, owner of the project, and
Parsons & Company and Marley Corporation, the subcontrac-
tors responsible for the design and erection of the scaffolding.
Michigan Mutual Liability Company, the workers' compensa-
tion insurer of the decedent's employer, was joined as a defen-
dant, and the plaintiff demanded a jury trial. The plaintiff, who
has remarried, filed a motion *in limine* seeking a protective
order to limit any mention of her remarriage at trial and to
ensure that she be referred to only by the name "Wood". The
Wayne Circuit Court, William J. Giovan, J., denied the motion
on the ground that the evidence of remarriage was relevant to
the plaintiff's claim of damages for loss of society and compan-
ionship. The Court of Appeals, Bashara, P.J., and Beasley and
D. E. Holbrook, Jr., JJ., reversed, holding that the evidence was
inadmissible (Docket No. 77-1149). Defendants appeal. *Held:*

Evidence of the plaintiff's remarriage or the probability of

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 5, 10] 22 Am Jur 2d, Death § 164.

Remarriage of surviving spouse, or possibility thereof, as affecting
action for wrongful death of deceased spouse. 87 ALR2d 252.

Admissibility of evidence of, or propriety of comment as to,
plaintiff-spouse's remarriage, or possibility thereof, in action for
damages for death of other spouse. 88 ALR3d 926.

[2, 3, 10] 57 Am Jur 2d, Name § 9.

Right of married woman to use maiden surname. 67 ALR3d 1266.

[6] 73 Am Jur 2d, Statutes § 322.

Simultaneous repeal and re-enactment of all, or part, of legislative
act. 77 ALR2d 336.

[7] 73 Am Jur 2d, Statutes § 324.

Simultaneous repeal and re-enactment of all, or part, of legislative
act. 77 ALR2d 336.

[8, 9] 73 Am Jur 2d, Statutes §§ 145, 146, 236, 237.

[9] 73 Am Jur 2d, Statutes §§ 271-273, 278-280.

remarriage is irrelevant and, therefore, properly excluded in determining the damages the plaintiff suffered upon the death of a spouse. Evidence of the possibility of remarriage is held not admissible for the purpose of mitigating damages for essentially the same reasons. However, although the fact of remarriage continues to be irrelevant to mitigate damages in a wrongful death action, a protective order which enables a plaintiff to be addressed by a name other than that which she is currently using is not proper. It would be offensive to the integrity of the judicial process if the plaintiff, after taking an oath to be truthful, were permitted to misrepresent her marital status to the jury. The defendants may not inquire into the details of her remarriage, nor may they offer evidence concerning it. However, the exclusion of the evidence may not be carried to the point of affirmatively misrepresenting the truth to the jury. In contemporary society, a woman may choose to retain her last name upon marriage or to adopt the name of her husband, and following remarriage, may choose to retain her former married name. It is incumbent upon the courts to honor her choice and address a woman by the name she has selected so as to avoid any false portrayal of her. The fact of the remarriage of a plaintiff surviving spouse may not be used to determine damages. If the plaintiff continues to use the name Wood regularly after a remarriage, she is entitled to a protective order also prohibiting referring to her or addressing her by the name of her present husband; the defendant's lawyer has no right to address or refer to her by a name which she does not choose to use regularly. If, however, at the time of trial she regularly uses her new husband's name she cannot properly ask the court to require the defendant's lawyer to address or refer to her by a name which she no longer regularly uses. An appropriate limiting instruction may be requested by the plaintiff in this regard.

Chief Justice Coleman, joined by Justice Ryan, concurred but would not limit the use of the fact of the plaintiff's remarriage to identity alone where loss of consortium is one of the elements of damages. Juries can weigh all manner of complex information and instructions including, after appropriate instruction, the fact of remarriage after the death of a spouse, when determining damages for loss of consortium. The earlier decision to the contrary should be overruled.

Justice Moody would hold that evidence of remarriage is inadmissible, and that the plaintiff may properly take the oath using her previous name.

1. The defendant's contention that the amendatory language

"under all of the circumstances" was added to the wrongful death act in 1971 by the Legislature to repudiate a 1965 decision which held that the fact of the remarriage of a surviving spouse was inadmissible is totally without merit. The focus of the 1971 amendment was a 1970 decision in which the Court held that the terms "pecuniary injury" and "pecuniary loss" did not include losses resulting from deprivation of society and companionship. The amendment clearly and unambiguously provided a remedy that the Court, by that decision, refused to provide. When the Legislature acts with such specificity to alter one decision of the Court, it is highly unlikely that it would intend by the same amendment to alter another decision without the same specificity.

2. The language "under all of the circumstances" is ambiguous. The most logical reading of it is that the Legislature intended that evidence of the quality of the marriage between the surviving spouse and the deceased should be admissible. For example, if they had been separated at the time of death, that fact would be relevant in assessing damages for loss of society and companionship. It would be implausible to conclude that the Legislature intended, by this ambiguous language, to allow evidence of remarriage and at the same time to overturn judicial precedent. Finally, the wrongful death act is part of the Revised Judicature Act which, the Legislature has specified, is remedial in character and should be liberally construed. A construction of the language "under all of the circumstances" as permitting evidence of remarriage would be inconsistent with a liberal construction.

3. The defendant further contends that the Court should reconsider its 1965 decision that the evidence is inadmissible. The Court said then that no rational argument can be made that such evidence is relevant, and that to hold that it is would be contrary to established principles of Michigan law regarding the admissibility of evidence in mitigation of damages and contrary to principles adopted by other jurisdictions which have considered the question. The policy supporting the decision is as valid today as it was 15 years ago. While it is important that a court not slavishly rely on precedent, it is also important to give respect to precedent and not to overrule or modify it unless some substantial reason is given for doing so.

4. The argument that the integrity of the court is undermined by permitting the plaintiff to take the stand and the oath using a name that is no longer hers is specious. The integrity of the system would be undermined, however, if mention were allowed of the irrelevant fact of remarriage and

the mention were to cause the plaintiff to lose an award, or to receive a diminished reward, to which the plaintiff was entitled. To inject such information concerning remarriage would not only introduce irrelevant matter, but what is more important, it would be admitting evidence which could very well have a tendency to confuse the jury and prejudice the plaintiff, putting a premium on form and overlooking substance.

Remanded for further proceedings.

83 Mich App 153; 268 NW2d 325 (1978) affirmed.

OPINION OF THE COURT

1. DEATH — WRONGFUL DEATH — DAMAGES — SOCIETY — COMPANION-SHIP — REMARRIAGE.

Evidence of a plaintiff's remarriage, or the probability or possibility of remarriage, is irrelevant to mitigate damages of the plaintiff surviving spouse in an action for the other spouse's wrongful death (MCL 600.2922; MSA 27A.2922).

2. HUSBAND AND WIFE — NAMES — MARRIED WOMEN — WITNESSES.

A woman may choose to retain her last name upon marriage or to adopt the name of her husband, or upon remarriage to retain her former married name; it is incumbent upon the courts to honor her choice and address a woman by the name she has selected so as to avoid any false portrayal of her.

3. HUSBAND AND WIFE — NAMES — MARRIED WOMEN — WITNESSES.

A plaintiff woman who has remarried and regularly uses her new husband's last name at the time of trial cannot properly ask the court to require the lawyer for the defendant to address or refer to her by a name which she no longer regularly uses; on the other hand, if she regularly uses a former name rather than her new husband's last name, the defendant's lawyer has no right to address or refer to her by a name which she does not choose to use.

CONCURRING OPINION BY COLEMAN, C.J.

See headnote 3.

4. DEATH — WRONGFUL DEATH — DAMAGES — SOCIETY — COMPANION-SHIP — REMARRIAGE.

*Evidence of a plaintiff's remarriage should be admissible, with appropriate instruction, where loss of consortium is one of the elements of damages in an action for the wrongful death of the plaintiff's decedent spouse (MCL 600.2922; MSA 27A.2922).*

CONCURRING OPINION BY BLAIR MOODY, JR., J.

5. DEATH — DAMAGES — EVIDENCE — HUSBAND AND WIFE — REMAR-
RIAGE.

*Evidence of a plaintiff's remarriage is inadmissible in an action
for the wrongful death of the plaintiff's spouse (MCL 600.2922;
MSA 27A.2922).*

6. STATUTES — CONSTRUCTION — RE-ENACTMENT.

*It may be assumed that the Legislature acted with knowledge of
the Court's decisions and that the Legislature intended the re-
enacted statute to carry the Court's interpretation with it
where the basic provisions of a statute have been construed by
the Court and those provisions are subsequently re-enacted by
the Legislature.*

7. DEATH — DAMAGES — SOCIETY — COMPANIONSHIP — STATUTES —
RE-ENACTMENT.

*The 1971 amendment of the wrongful death act clearly and
unambiguously provided a remedy for loss of the society and
companionship of the deceased which the Supreme Court, by
judicial decision, had refused to provide; when the Legislature
acts with such specificity to alter one decision of the Court, it
would be highly unlikely that it would intend by the same
amendment to alter another decision of the Court concerning
the admissibility of evidence without the same specificity (1971
PA 65).*

8. DEATH — DAMAGES — EVIDENCE — REMARRIAGE — STATUTES —
CONSTRUCTION.

*The Legislature did not intend an amendment of the wrongful
death act, by use of the ambiguous phrase "under all of the
circumstances", to allow the admission of evidence of a plaintiff
surviving spouse's remarriage and at the same time to overturn
judicial precedent (1971 PA 65).*

9. DEATH — WRONGFUL DEATH — STATUTES — CONSTRUCTION.

*The wrongful death act, as a part of the Revised Judicature Act,
is remedial in character and should be liberally construed
(MCL 600.102, 600.2922; MSA 27A.102, 27A.2922).*

10. DEATH — DAMAGES — EVIDENCE — REMARRIAGE — NAMES —
MARRIED WOMEN.

*To inject information concerning the remarriage of a plaintiff
surviving spouse into an action for wrongful death, by permit-
ting a remarried woman to be identified by the last name of
her new husband, would not only introduce irrelevant matter,
but what is more important would be admitting evidence which*

*could very well have a tendency to confuse the jury and prejudice the plaintiff (MCL 600.2922; MSA 27A.2922).*

*Lopatin, Miller, Bindes, Freedman, Bluestone, Erlich & Rosen* (by *Michael Gagleard)* for plaintiff.

*Dice, Sweeney, Sullivan & Feikens, P.C.,* for defendants Detroit Edison Company, Parsons & Company, and Marley Corporation.

*Joselyn, Rowe, Jamieson & Grinnan, P.C.,* for defendant Michigan Mutual Liability Company.

FITZGERALD, J. Raymond Wood died following injuries sustained when the scaffold on which he was working collapsed. Cecelia Wood, his widow, brought an action under the wrongful death act (MCL 600.2922; MSA 27A.2922) seeking, *inter alia,* damages for loss of his society and companionship. Defendants were Detroit Edison, owner of the project, and Parsons & Company and Marley Corporation, the subcontractors responsible for the design and erection of the scaffolding. Michigan Mutual, the workers' compensation carrier of decedent's employer, was joined as a defendant on the theory of negligent safety inspection. Jury trial was demanded.

During the pendency of the circuit court action, plaintiff, who had remarried, filed a motion *in limine* seeking a protective order to prohibit at trial any mention of remarriage or prospective remarriage of Cecelia Wood and to ensure that she be referred to only by the name "Wood". The motion was denied. The court reasoned that if loss of society and companionship were claimed as damages, all facts pertaining to such loss, including remarriage, should be considered.

The Court of Appeals reversed, concluding that

evidence of remarriage should not be allowed, and remanded the case for trial with instructions that the protective order be issued. This Court granted leave to appeal limited to the issue whether, in light of the amendatory language of 1971 PA 65 (MCL 600.2922[2]; MSA 27A.2922[2]), the remarriage of a plaintiff surviving spouse is admissible in a wrongful death action.

In 1971 the Legislature amended § 2 of the wrongful death act to provide:

"(2) Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and *in* every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, *under all of the circumstances* to those persons who may be entitled to such damages when recovered *including* damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death. *The amount of damages recoverable by civil action for death caused by the wrongful act, neglect or fault of another may also include recovery for the loss of the society and companionship of the deceased.* Such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate. The amount recovered in every such action shall be distributed to the surviving spouse and next of kin who suffered injury and in proportion thereto. Within 30 days after the entry of such judgment, the judge before whom such case was tried or his successor shall certify to the probate court having jurisdiction of the estate of such deceased person the amount and date of entry thereof, and shall advise the probate court by written opinion as to the amount thereof representing the loss suffered by the surviving spouse and all of the next of kin, and the proportion of such total loss suffered by the

surviving spouse and each of the next of kin of such deceased person, as shown by the evidence. After providing for the payment of the reasonable medical, hospital, funeral and burial expenses for which the estate is liable, the *probate court shall determine as provided by law the manner in which the amount representing the total loss suffered by the surviving spouse and next of kin shall be distributed, and the proportionate share thereof to be distributed to the surviving spouse and the next of kin. The remainder of the proceeds of such judgment shall be *distributed according to the intestate laws.*" (Amendments emphasized.)

The amendments followed closely this Court's decision in *Breckon v Franklin Fuel Co,* 383 Mich 251; 174 NW2d 836 (1970), which held that loss of companionship was not a pecuniary injury for purposes of the wrongful death act. The Legislature inserted three additions into this statutory section:

(1) recovery of damages for loss of society and companionship was specifically authorized;

(2) the phrase "under all of the circumstances" was inserted; and

(3) the method of distribution was included.

Plaintiff argues that these changes were directed solely to address this Court's ruling in *Breckon* and did not authorize admission into evidence of either the fact or the possibility of a plaintiff's remarriage.

Defendants contend that the phrase "under all of the circumstances" is unambiguous, clearly serving to broaden the scope of damages recoverable following a wrongful death and allowing the court to consider any and all evidence affecting the amount of damages to be awarded.

The rule in Michigan, and that followed by a majority of jurisdictions, is that "evidence of plain-

tiff's remarriage or the *probability* of her remarriage is irrelevant and, therefore, was properly excluded, in *determining the damages* she suffered upon the death of her spouse".[1] (Emphasis supplied.) The rationale for the rule rests predominantly on three factors:[2]

(1) A cause of action for wrongful death arises at the time of death. Thus, the amount of damages suffered is fixed as of that time and is to be determined as of that date.

(2) To allow evidence of a subsequent marriage to influence the amount of damages awarded for the loss of society and companionship of a prior marriage is highly speculative. Comparing one relationship to another in an attempt to determine damages invites qualitative inquiry inappropriate to the probing scrutiny of the trial court.

(3) Similar to the collateral source rule, evidence of the effects of a subsequent marriage should have no bearing on the amount due a plaintiff following a wrongful death. Compensation received from another source should not affect the responsibility owed to the injured party by the tortfeasor.[3]

Evidence of the possibility of remarriage is held not admissible for the purpose of mitigating damages for essentially the same reasons.

In accordance with such reasoning, while we continue to believe that the fact of remarriage is irrelevant to mitigate damages in a wrongful death action, we feel that a protective order which enables a plaintiff to be addressed by a name other than that which she is currently using is not

---

[1] *Bunda v Hardwick*, 376 Mich 640, 656; 138 NW2d 305 (1965).

[2] See Anno: *Admissibility of evidence of, or propriety of comment as to, plaintiff spouse's remarriage, or possibility thereof, in action for damages for death of other spouse*, 88 ALR3d 926.

[3] *Bunda, supra*, 652-653.

proper. We agree with the following reasoning of the Supreme Court of New Jersey:

"It would be offensive to the integrity of the judicial process if the plaintiff, after taking an oath to be truthful, were permitted to misrepresent her marital status to the jury. Of course, the defendants may not inquire into the details of the remarriage nor may they offer evidence concerning it. However, the desirable exclusion of evidence relating to the remarriage may not be carried to the point of affirmatively misrepresenting the truth to the jury."[4] *Dubil v Labate,* 52 NJ 255, 261-262; 245 A2d 177, 180 (1968).

The Illinois Supreme Court, in addressing this issue, stated, "We believe the judicial process in its search for truth need not resort to the condonation of perjury to accomplish its objective". *Watson v Fischbach,* 54 Ill 2d 498, 503; 301 NE2d 303, 306 (1973).

Contemporary society offers a woman various options regarding her choice of name upon marriage. She may choose to retain her birthname or she may adopt the name of her husband. Following a subsequent remarriage, for any number of reasons, she may prefer to still be known by the name she has previously used. It is incumbent upon the courts to honor her choice and address a woman by the name she has selected so as to avoid any sense of false portrayal.

We therefore hold that evidence of a plaintiff surviving spouse's remarriage may not be used to determine damages. If the plaintiff continues to regularly use the name Wood—Ms. or Mrs. Wood —after a remarriage, she is entitled to a protective order prohibiting referring to her or addressing

---

[4] We differ from the view taken in the New Jersey case that the trial judge is required to instruct the jury, at the beginning of the case, that the plaintiff has remarried.

her by the name of her present husband; the defendant's lawyer has no right to address or refer to her by a name which she does not choose regularly to use. If, however, at the time of trial she regularly uses her new husband's name she cannot properly ask the court to require the defendant's lawyer to address or refer to her by a name which she no longer regularly uses. An appropriate limiting instruction may be requested by plaintiff in this regard. We remand this case to the trial court for further proceedings in accordance with this opinion.

KAVANAGH, WILLIAMS, and LEVIN, JJ., concurred with FITZGERALD, J.

COLEMAN, C.J. We concur with Justice FITZGERALD, but would not limit the truth to identity alone, if loss of consortium is one of the elements of damages. We do not adhere to the notion that juries can handle all manner of complex information and instructions but cannot weigh, after appropriate instruction, the fact of remarriage after the death of a spouse when determining damages for loss of consortium. *Bunda v Hardwick,* 376 Mich 640; 138 NW2d 305 (1965), should be overruled.

RYAN, J., concurred with COLEMAN, C.J.

BLAIR MOODY, JR., J. *(for affirmance).* We granted leave to appeal to consider whether in light of the amendatory language of 1971 PA 65 (MCL 600.2922[2]; MSA 27A.2922[2]), the remarriage of a plaintiff surviving spouse is admissible in a wrongful death action. In the process, we are asked to reconsider this Court's decision in *Bunda v Hardwick,* 376 Mich 640; 138 NW2d 305 (1965),

which held that the remarriage of a surviving
spouse was inadmissible in a wrongful death ac-
tion. Because we see no suggestion in the legisla-
tive amendment that the Legislature intended to
change the rule announced by a unanimous Court
in *Bunda* and because no persuasive reason has
been proffered to justify overruling our decision in
*Bunda,* we again hold that evidence of the remar-
riage of a surviving spouse is inadmissible in a
wrongful death action. We, therefore, affirm the
Court of Appeals.

I

In order to fully understand the present contro-
versy, it is necessary to outline in chronological
order certain decisions of this Court and certain
legislative enactments involving the wrongful
death statute.

Prior to 1960, the only recoverable loss in a
wrongful death action was the monetary loss sus-
tained by the heirs at law. This was the result of
judicial interpretations of the wrongful death act,
which, at the time, read in pertinent part as
follows:

"Every such action shall be brought by, and in the
names of, the personal representatives of such deceased
person, and in every such action the court or jury may
give such damages, as, the court or jury, shall deem fair
and just, with reference to the pecuniary injury result-
ing from such death, to those persons who may be
entitled to such damages when recovered and also
damages for the reasonable medical, hospital, funeral
and burial expenses for which the estate is liable and
reasonable compensation for the pain and suffering,
while conscious, undergone by such deceased person
during the period intervening between the time of the
inflicting of such injuries and his death: Provided, how-

ever, That such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate. The amount recovered in every such action for pecuniary injury resulting from such death shall be distributed to the surviving spouse and next of kin who suffered such pecuniary injury and in proportion thereto. Within 30 days after the entry of such judgment, the judge before whom such case was tried or his successor shall certify to the probate court having jurisdiction of the estate of such deceased person the amount and date of entry thereof, and shall advise the probate court by written opinion as to the amount thereof representing the total pecuniary loss suffered by the surviving spouse and all of the next of kin, and proportion of such total pecuniary loss suffered by the surviving spouse and each of the next of kin of such deceased person, as shown by the evidence introduced upon the trial of such case. After providing for the payment of the reasonable medical, hospital, funeral and burial expenses for which the estate is liable, the probate court shall determine as provided by law the manner in which the amount representing the total pecuniary loss suffered by the surviving spouse and next of kin shall be distributed, and the proportionate share thereof to be distributed to the surviving spouse and next of kin. The remainder of the proceeds of such judgment shall be distributed according to the intestate laws." 1948 CL 691.582.

This Court, in *Wycko v Gnodtke,* 361 Mich 331; 105 NW2d 118 (1960), expanded the narrow interpretation of the term "pecuniary loss" as it was found in the wrongful death act. The Court held:

"The pecuniary value of a human life is a compound of many elements. * * * [A]n individual member of a family has a value to others as part of a functioning social and economic unit. This value is the value of mutual society and protection, in a word, companionship. The human companionship thus afforded has a definite, substantial, and ascertainable pecuniary value

and its loss forms a part of the 'value' of the life we seek to ascertain." (Footnote omitted.) *Wycko, supra,* 339-340.

Thus, loss of society and companionship was a pecuniary loss, recoverable under the wrongful death act.

In 1965, the Legislature amended the wrongful death act. Only the last line of the act was changed. That line was rewritten to read as follows:

"The remainder of the proceeds of such judgment shall be assets of the estate of the deceased." 1965 PA 146.

No attempt was made to alter this Court's *Wycko* interpretation.

Also in 1965, this Court announced its *Bunda* decision. Justice Souris, writing for a unanimous Court, stated:

"I would hold that evidence of plaintiff's remarriage or the *probability* of her remarriage is irrelevant and, therefore, was properly excluded, in determining the damages she suffered upon the death of her spouse." *Bunda, supra,* 656.

The next major event in the series was the Court's decision in *Breckon v Franklin Fuel Co,* 383 Mich 251; 174 NW2d 836 (1970). *Breckon* was a complete retreat from the *Wycko* holding. The Court determined that discussion of loss of companionship in *Wycko* was merely dictum. The Court held that the terms "pecuniary injury" and "pecuniary loss" as found in the wrongful death act never included those losses resulting from deprivation of society and companionship.

Following the *Breckon* decision, the Legislature enacted 1971 PA 65, which expressly permitted recovery for loss of society and companionship. The wrongful death act was amended to read in pertinent part as follows:

"Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, *under all of the circumstances* to those persons who may be entitled to such damages when recovered *including* damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death. *The amount of damages recoverable by civil action for death caused by the wrongful act, neglect or fault of another may also include recovery for the loss of the society and companionship of the deceased.* Such person or persons entitled to such damages shall be of that class who, by law, would be entitled to inherit the personal property of the deceased had he died intestate." (Emphasis added.) MCL 600.2922(2); MSA 27A.2922(2).

## II

Even a cursory examination of this chronological sequence makes certain things clear. It can be assumed that when the Legislature amended the wrongful death act in 1965, it was aware of the *Wycko* decision and it approved of that decision. In this context, it has been said:

"It has long been recognized that where this Court has given an interpretation to a statute with no reac-

tion from the legislature in the form of statutory revision, it may be assumed there is legislative acquiescence in the statute's meaning. *Even more persuasive is the rule that where the basic provisions of a statute have been construed by the courts and these provisions are subsequently re-enacted by the legislature, it may be assumed that the legislature acted with knowledge of the Court's decisions and that the legislature intended the re-enacted statute to carry the Court's interpretation with it." Breckon, supra,* 295 (Adams, J., dissenting).

See also *Jeruzal v Wayne County Drain Comm'r,* 350 Mich 527, 534; 87 NW2d 122 (1957).

Further, in this same vein, after this Court's *Bunda* decision, the Legislature took no action whatsoever. Approval may be assumed from this legislative acquiescence. However, the same cannot be said of this Court's *Breckon* decision.

After *Breckon* was decided, the Legislature enacted 1971 PA 65. There can be no question as to the reason for the enactment. The Legislature specifically provided for what this Court had denied in *Breckon:*

"The amount of damages recoverable by civil action for death caused by the wrongful death act, neglect or fault of another may also include recovery for the loss of the society and companionship of the deceased."

The defendant would have us read certain other amendatory language in 1971 PA 65 as a repudiation of this Court's *Bunda* decision. Defendant focuses on the following language, "under all of the circumstances", and contends that this language should be interpreted to permit evidence of remarriage in wrongful death actions. The contention is totally without merit.

The complete focus of 1971 PA 65 was this

Court's *Breckon* decision. The legislation clearly and unambiguously provided a remedy that this Court refused to provide. When the Legislature acts with such specificity to alter one decision of this Court, it would be highly unlikely that the Legislature would intend to alter another decision of this Court without the same specificity.

The language "under all of the circumstances" is ambiguous. The most logical reading of the language is that the Legislature intended that evidence of the "quality" of the marriage between the surviving spouse and deceased should be admissible. For example, if the surviving spouse and the deceased were separated at the time of death, such information would be relevant in assessing damages for loss of society and companionship. It would be implausible to conclude that the Legislature intended, by use of this same *ambiguous* language, to allow evidence of remarriage and at the same time overturn precedent of this Court.

Finally, the wrongful death act is part of the Revised Judicature Act. The Legislature has provided that the RJA is remedial in character and should be liberally construed. MCL 600.102; MSA 27A.102. A construction of the language "under all of the circumstances" as permitting evidence of remarriage would be totally inconsistent with the liberal construction that must be given to the RJA.

## III

Having failed in its legislative argument, defendant further contends that this Court should reconsider its *Bunda* decision. There seems little reason for this Court to do so.

At the time of the *Bunda* decision, Michigan,

according to some authority, was the only state that adhered to the rule that remarriage was admissible. Anno: *Admissibility of evidence of, or propriety of comment as to, plaintiff spouse's remarriage, or possibility thereof, in action for damages for death of other spouse,* 88 ALR3d 926. This Court in a unanimous opinion in *Bunda* analyzed all the Michigan authority and concluded that there was no logical reason nor reason based on policy for this Court to continue to adhere to its antiquated rule. Justice SOURIS wrote:

"Thus it is seen that the rule we are asked to apply has its origin in a shorthand expression casually delivered by the Court in *[Jones v McMillan,* 129 Mich 86; 88 NW 206 (1901)]* in 1901 and mistakenly adopted as a rule of law by this Court in *[Sipes v Michigan Central R Co,* 231 Mich 404; 204 NW 84 (1925)]* in 1925, and only twice thereafter, in *[Stuive v Pere Marquette R Co,* 311 Mich 143; 18 NW2d 404 (1945)]* in 1945 and in *[Wechsler v Mroczkowski,* 351 Mich 483; 88 NW2d 394 (1958)]* in 1958, even having been mentioned by this Court. Furthermore, in none of the cases cited was any reasoned thought given by this Court to the question of relevance of evidence of remarriage, or of evidence of the *probability* thereof, to the damages sustained as the result of the death of a spouse. Had such thought been given to the question of relevance, I am convinced that the 'rule' never would have been adopted, not alone because no rational argument can be made that such evidence is relevant, but also because such 'rule' would be at war with established principles of Michigan law regarding the admissibility of evidence in mitigation of damages, and, as well, with evidentiary principles adopted by other jurisdictions which have considered the question." *Bunda, supra,* 652.

The policy reasons supporting the *Bunda* decision seem equally as valid today as they did 15 years ago when that decision was announced.

While it is important that a court not slavishly rely on precedent, it is also important to give respect to precedent and not overrule or modify it unless some substantial reason is given for doing so.

Defendant suggests that *the* reason for modifying the *Bunda* rule is that the integrity of the court is undermined by permitting a remarried woman, as in this case, to take the stand and take the oath using a name that is no longer hers. See *Dubil v Labate,* 52 NJ 255; 245 A2d 177 (1968). This argument is specious.

The integrity of the judicial system is not compromised by allowing this remarried plaintiff to take the oath under her previous name. The integrity of the system would be undermined, however, if mention were allowed of an irrelevant item, such as the remarriage, and this irrelevant item were to cause a party to lose or to receive a diminished award to which the party was entitled. The Rhode Island Supreme Court, among others, considered this very issue we are facing today. In rejecting *any* mention of the remarriage of plaintiff, the Court reasoned:

"We agree with the concern of the New Jersey court, as expressed in *Dubil,* for the maintenance of the integrity of the judicial process at all times. But we must bear in mind, and never lose sight of the fact, that the primary purpose of a judicial hearing is to decide cases on the basis of relevant evidence by ascertaining the truth, unfettered by irrelevant and extraneous evidence which might confuse or unduly prejudice the triers of fact against either of the parties. It is undisputed that the remarriage of a widow in this type of a case has no bearing on the measure of damages and is, therefore, absolutely irrelevant on that issue. Her new name, or her remarriage, is of no concern to the jury in determining the amount of damages, if any, due as a

result of her husband's death. Since the measure of damages is fixed as of the time of decedent's death, and inasmuch as conditions happening thereafter have nothing at all to do with the question of damages, we fail to see how the integrity of the judicial process is endangered by a hearing based only on relevant evidence.

*"To inject information concerning a widow's remarriage would, in our judgment, not only introduce irrelevant matter, but what is more important, it would be admitting evidence which could very well have a tendency to confuse the jury and adversely prejudice the plaintiff. This would in our opinion be putting a premium on form and overlooking substance.* Nor do we believe that an instruction to the jury at the inception of the trial, or during the trial, saying that evidence of remarriage is not to be considered by them, will outweigh the likelihood of misuse of such evidence by the jury. For the same reason, neither do we believe that the presumption that the jury will follow the trial judge's instructions will outweigh the likelihood of misuse of such evidence." (Emphasis added.) (Citations omitted.) *Wiesel v Cicerone,* 106 RI 595, 606-607; 261 A2d 889 (1970).

This strong and reasonable statement is equally applicable to our situation today.

## IV

In conclusion, we hold that evidence of the remarriage of a surviving spouse is inadmissible in a wrongful death action.

Affirmed. Costs to plaintiff.