SCHAIBLE v MYERS

Docket No. 64809. Decided November 2, 1981. On application by the
defendants for leave to appeal the Supreme Court, in lieu of
granting leave to appeal, reversed the judgment of the Court of
Appeals and reinstated the judgment of the trial court.

Dennis L. Schaible, the widower of Kathleen A. Schaible, who
died in an automobile accident, brought an action under the
wrongful death act against Kevin J. Myers and Carlton N.
Myers. The defendants admitted liability and after trial on the
issue of damages a jury in St. Clair Circuit Court, Ernest F.
Oppliger, J., returned a verdict for the plaintiff of $30,000. The
defendants were permitted by the trial court, over the plain-
tiff's objection, to cross-examine the plaintiff's expert witness on
whether, in forming his opinion on damages, he had assumed
that the plaintiff would not remarry. The Court of Appeals,
Bashara, P.J., and R. M. Maher and Daner, JJ., in an unpub-
lished per curiam opinion, reversed and remanded for a new
trial on the ground that the question about the plaintiff's
remarriage improperly suggested to the jury that the possibility
of the plaintiff's remarriage should have been considered to
mitigate damages (Docket No. 78-323). The defendants appeal.

In a per curiam opinion signed by Chief Justice Coleman and
Justices Williams, Fitzgerald, and Ryan, the Supreme Court
*held:*

The possibility of the remarriage of a surviving spouse is not
admissible to prove that there has been no loss of consortium,
but an exposition of the assumptions, including the possibility
of remarriage, on which an expert witness relied in calculating
the plaintiff's economic loss is necessary to an intelligent
understanding and evaluation of the worth of the expert's
opinion. The expert witness's assumption concerning remar-
riage was of interest solely because of its effect on the issue of
economic values. It is proper to impeach an expert witness by
reviewing the assumptions which underlie the expert's opinion
and by arguing that the opinion is mere conjecture based on
erroneous assumptions.

The judgment of the Court of Appeals is reversed, and the
judgment of the trial court is reinstated.

Justice Moody, joined by Justices Levin and Kavanagh, dis-

sented on the ground that, in effect, the defendants were permitted to bring an irrelevant and improper consideration, the possibility of the plaintiff's remarriage, to the attention of the jury. Evidence of the effects of a subsequent remarriage should have *no bearing on the amount of recovery for a wrongful death.* Compensation received by the plaintiff from another source should not affect the responsibility owed to the injured party by the tortfeasor. It makes no difference whether the jury is specifically told to take into account the possibility of remarriage in assessing damages or whether the possibility is used to evaluate testimony by an expert witness regarding damages. In either case, such evidence is irrelevant and should be excluded.

*McIntosh, Mugan, Cummings & McColl* (by *John B. McNamee*) for plaintiff.

*Bush, Luce, Henderson & Bankson* (by *Robert J. Henderson*) for defendants.

PER CURIAM. In *Wood v The Detroit Edison Co,* 409 Mich 279, 288; 294 NW2d 571 (1980), a majority of this Court agreed that evidence of a plaintiff surviving spouse's remarriage was not to be used to determine damages in a wrongful death action.[1] We now must consider whether error occurred in this case when an expert witness, who offered his opinion as to the amount of damages suffered by the surviving spouse, was asked whether he was assuming that the surviving spouse would not remarry.

I

Plaintiff's decedent died in an automobile accident. Liability was admitted; the parties tried the issue of damages. A jury returned a verdict for the plaintiff in the amount of $30,000. The Court of

---

[1] See also *Bunda v Hardwick,* 376 Mich 640; 138 NW2d 305 (1965).

Appeals reversed that judgment and remanded the case for a new trial.[2]

## II

To establish the amount of his damages, the plaintiff called to the stand a witness who expressed the opinion that the plaintiff had been damaged by as much as $528,000. On cross-examination, the defendants undertook a detailed and comprehensive examination of the assumptions which underlay this opinion. A portion of this examination is recounted here:

"*Q.* One of your assumptions, I assume, is that Mrs. Schaible would continue to want to work during all of those years as opposed to being a housewife and mother?

"*A.* Yes, for the years after she would be age 42.

"*Q.* And, of course, if for one reason or another she decided she didn't want to work that would affect your calculations, would it not?

"*A.* That's correct.

"*Q.* One of your assumptions was that she would, if she continued working, that she would turn over all of her earnings, over and above the cost of her own maintenance, to her husband or at least he would receive the economic benefit of it?

"*A.* Based on the information I have this is what's been happening in the family.

"*Q.* That is one of your assumptions?

"*A.* That's correct.

"*Q.* It is one of your assumptions that would continue throughout her working life?

"*A.* Yes.

"*Q.* Even after they got in their forties and fifties, your assumption was that would still continue?

---

[2] *Schaible v Myers,* unpublished per curiam opinion of the Court of Appeals of January 10, 1980, Docket No. 78-323.

"*A.* That's correct.

"*Q.* She wouldn't keep any of her own earnings for herself or whatever purpose, they would all go other than the 30 percent that you subtracted for the cost of her maintenance, one of your assumptions was that all of it would go to Mr. Schaible or at least he would receive the economic benefit of that?

"*A.* I assumed beyond the 30 percent, right.

"*Q.* One of your assumptions, I assume, was that the marriage would continue during that period?

"*A.* Yes. All the indications I had it was a happy marriage.

"*Q.* But that was one of your assumptions?

"*A.* Based on the information I have.

"*Q. And one of your assumptions, I assume, also, was that Mr. Schaible would not remarry and everything would remain the same up to his own death?*

"*A.* Yes.

"*Q.* Another one of your assumptions was that Mrs. Schaible would continue in good health and be able to work?

"*A.* That's correct.

"*Q.* Will you agree, Mr. Tansky, there is really no way you can say for sure any of the assumptions you made and upon which your opinions were based are valid with reference to this particular individual other than your opinion?

"*A.* Could you restate that question?

"*Q.* Okay, I can try, anyway. Would you agree there's really no way you can say, talking about you, now, for sure, that any or all of the assumptions that you have made and upon which your opinions are based, are valid, or would turn out to be valid with reference to this particular individual?

"*A.* In my opinion?

"*Q.* No, I'm not asking for your opinion, I'm asking whether there's any way you can say they will be valid.

"*A.* No, things might have been better or worse economically.

"*Q.* So, what we are saying, again, you don't have a crystal ball, you don't know what is going to happen in

the future or what would happen with reference to any one specific individual?

"*A.* That's correct." (Emphasis supplied.)

The defendants had earlier received permission from the trial court to ask the emphasized question. That question and its answer were discussed by defendants during closing argument.

The Court of Appeals described the question and answer as an "erroneous suggestion that the possibility of remarriage could be considered to mitigate damages". The Court reversed, stating:

"Although the defendants' cross-examination and argument did not explicitly state that the possibility of remarriage should be considered to mitigate damages, the facts actually elicited serve no purpose other than to infer *[sic]* that the expert's estimate of economic loss was not accurate because it did not reflect a possibility that the plaintiff would remarry."

### III

We conclude that the Court of Appeals erred. The jury was not told to take into account the possibility that the plaintiff might remarry. Rather it listened to an exposition of the many assumptions upon which the expert witness relied in making his calculations of the plaintiff's economic loss. Such an exposition is necessary to an intelligent understanding and evaluation of the worth of the expert's opinion.

Unlike the situation in *Wood,*[3] this expert's assumption concerning remarriage was of interest to

[3] In *Wood* the plaintiff had remarried prior to trial. The trial court permitted testimony concerning the remarriage on the ground that if loss of society and companionship were claimed as damages, all facts pertaining to such loss, including remarriage, should be considered. *Wood,* 409 Mich 284.

the defendants solely because of its effect on the expert's opinion as to the amount of economic damages. It was proper for defendant to examine fully the assumptions which underlay the expert's opinion. By calling into question the worth of an expert's many assumptions, defense counsel can seek to show that what appears to be the opinion of an expert is no more than conjecture which the jury can then be urged to ignore.

It remains improper to introduce evidence of the possibility of remarriage to prove that there has been no loss of consortium. It is proper, though, to impeach an expert witness by reviewing the assumptions which underlie the expert's opinion and by arguing that the expert's opinion is mere conjecture based upon erroneous assumptions.

In lieu of granting leave to appeal, we reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court. GCR 1963, 853.2(4).

Costs to defendants.

COLEMAN, C.J., and WILLIAMS, FITZGERALD, and RYAN, JJ., concurred.

BLAIR MOODY, JR., J. *(dissenting)*. Less than two years ago, in *Wood v The Detroit Edison Co*, 409 Mich 279, 286-287; 294 NW2d 571 (1980), a majority of this Court reaffirmed Michigan's rule that

" 'evidence of plaintiff's remarriage or the *probability* of her remarriage is irrelevant and, therefore, was properly excluded, in *determining the damages* she suffered upon the death of her spouse' ".[1]

---

[1] The *Wood* Court quoted *Bunda v Hardwick,* 376 Mich 640, 656; 138 NW2d 305 (1965). In *Bunda,* as in the instant case, the Court focused upon the issue of economic loss, as opposed to loss of consortium.

Describing the reasons for the rule, the Court noted:

"[E]vidence of the effects of a subsequent marriage should have no bearing on the amount due a plaintiff following a wrongful death. Compensation received from another source should not affect the responsibility owed to the injured party by the tortfeasor." *Wood,* 287.

Because the majority decision today not only undercuts the rule so recently restated in *Wood,* but also conflicts with its underlying rationale, we respectfully dissent.

As stated by the Court of Appeals in the instant case:

"The defendants argue that the possible remarriage of the plaintiff in this case was not argued as a possible mitigating factor but that it was only mentioned to inform the jury that the plaintiff's expert witness based his calculation of damages upon the assumption that the plaintiff would not remarry. The defendants contend that their right to cross-examine the plaintiff's expert witness to determine the assumptions which he made in calculating damages extends to asking whether or not the expert assumed that the plaintiff would not remarry. Although the defendants' cross-examination and argument did not explicitly state that the possibility of remarriage should be considered to mitigate damages, the facts actually elicited serve no purpose other than to infer [sic] that the expert's estimate of economic loss was not accurate because it did not reflect a possibility that the plaintiff would remarry. The assumption implicit within the expert's conclusion was, however, a proper application of the cases cited above [*Bunda v Hardwick,* 376 Mich 640; 138 NW2d 305 (1965); and *Bradfield v Estate of Burgess,* 62 Mich App 345; 233 NW2d 541 (1975), *lv den* 395 Mich 803 (1975)] to the estimate of damages in this case."

Thus, in effect, defendants were permitted to

bring an irrelevant and improper consideration, the possibility of plaintiff's remarriage, to the attention of the jury.[2] Under the rationale stated in *Wood,* it should make no difference whether the jury is specifically told to take account of the factor of remarriage in assessing damages, as occurred in *Wood,* or whether that factor is used to evaluate an expert's testimony regarding damages, as occurred in the instant case. In either case, such evidence is irrelevant and should be excluded.

Accordingly, we would affirm the decision of the Court of Appeals and remand the case for a new trial.

KAVANAGH and LEVIN, JJ., concurred with BLAIR MOODY, JR., J.

---

[2] In the instant case, not only did defendants' attorney raise the question of Mr. Schaible's remarriage during cross-examination of the expert witness, but he also discussed the question and its answer during his closing argument. Such repetition may have served to exaggerate the improper effect upon the jury.